ATLANTIC MORTGAGE & INVESTMENT
CORPORATION *v.* JOSEPH
STEPHENSON ET AL.
(AC 24437)

Lavery, C. J., and Flynn and Bishop, Js.

Argued September 15—officially released November 23, 2004

*Roger Lee Crossland*, for the appellants-cross appellees (named defendant et al.).

*Geoffrey K. Milne*, for the appellee-cross appellant (plaintiff).

*Opinion*

FLYNN, J. The defendants Joseph Stephenson and Phyllis Stephenson[1] appeal, and the plaintiff, Atlantic Mortgage & Investment Corporation cross appeals from the judgment of the trial court ordering a strict foreclosure on certain of the defendants' real property in favor of the plaintiff and finding in favor of the defendants on their counterclaim, which alleged a breach of the implied covenant of good faith and fair dealing (implied covenant). On appeal, the defendants claim that the court improperly (1) awarded attorney's fees to the plaintiff and (2) failed to credit insurance proceeds to the unpaid principal balance.[2] On cross appeal, the plaintiff claims that (1) the court improperly found the plaintiff liable for abuse of process and (2) the defendants should have been judicially estopped from raising an abuse of process claim. We affirm the judgment of the trial court.

The following facts and procedural history, gleaned from the record, are relevant to understanding and resolving the issues on appeal. In 1995, the city of Stamford issued a cease and desist order with respect to a building at 179 Highview Avenue, owned by the defendants, and a zoning action ensued. In 1997, Constitution Mortgage Bankers, Inc. (Constitution), the predecessor in interest to the plaintiff, commenced a foreclosure

---

[1] Several other individuals and subsequent encumbrancers of the Stephensons' property were named as defendants in this action. We refer in this opinion to the Stephensons as the defendants.

[2] The defendants also claimed that the court improperly failed to vacate the prejudgment attachment on their home. On October 15, 2003, we dismissed this claim as untimely and ordered it stricken from the appeal.

action against the defendants for failure to comply with the terms of a rehabilitation loan agreement by violating the Stamford zoning regulations. Also in 1997, a loss occurred to the Highview Avenue property, and an insurance check for $63,946.34 was issued to Constitution and the defendants.[3]

Three years later, in October, 2000, the foreclosure action was called for trial. The plaintiff, then Atlantic Mortgage & Investment Corporation, requested a continuance because it had not disclosed its experts on the issue of compliance with local zoning ordinances and because it also wanted to amend its complaint to allege nonpayment as the default. After the court denied the motion for a continuance, the plaintiff withdrew its action and commenced this new foreclosure action in March, 2001.

In the March, 2001 complaint, the plaintiff sought to foreclose on a note in the original principal amount of $201,700, alleging that the defendants had been in default on the note since February, 1997, and that it had exercised its option to accelerate the balance due and to declare the note due and payable. Having not been paid, the plaintiff sought to foreclose the mortgage on the Highview Avenue property that secured the note. The plaintiff obtained an ex parte attachment in the amount of $210,000 on the defendants' residence at 251 Greyrock Place in Stamford, as well as a garnishment of the insurance proceeds check in the amount of $63,946.34, arising from the claim at the Highview Avenue property.

The defendants filed a second revised answer with special defenses, setoffs and a counterclaim on December 17, 2002. The plaintiff filed a motion to strike the

[3] This check was not negotiated. At oral argument before this court, the plaintiff's counsel informed the court and the defendants that a new check had been secured, and that the proceeds from it remain in a trustee account.

special defenses, setoffs and counterclaim and a motion for summary judgment. On April 4, 2003, the court granted the motion to strike the special defenses and the setoffs. The court also granted the motion for summary judgment on the issue of liability under the complaint, and it dismissed the fraud count of the counterclaim. The court denied the plaintiff's motion for summary judgment on the counts of the counterclaim alleging breach of the implied covenant and violation of the Connecticut Unfair Trade Practices Act (CUTPA) General Statutes § 42-110a et seq.

On May 15, 2003, after a two day trial, the court ordered strict foreclosure of the Highview Avenue property, found the debt to be $283,873.77 and awarded the plaintiff an additional $52,157.81 in legal fees and expenses. The court also ordered that the insurance proceeds for the 1997 loss, in the amount of $63,946.34, be paid to the plaintiff and immediately credited against the defendants' debt. The court also found for the defendants on their counterclaim for breach of the implied covenant and awarded them $4615 in damages. In its November 20, 2003 articulation, the court explained its rationale for the award on the counterclaim, stating that, although it recognized that the plaintiff's right to withdraw the prior action was absolute, it "found that it was manifestly improper [for the plaintiff] to continue prosecution of the foreclosure case for three years to the brink of trial without any action to engage an expert necessary to prove the basic contention of the claim." Furthermore, the court explained: "Because this foreclosure action is an equitable proceeding, and there was no unfair surprise (surely the plaintiff understood that the defendants incurred legal fees [in the earlier proceeding]) and [the court is] not entirely oblivious to the fact that the plaintiff itself sought and was granted reimbursement of substantially larger legal fees, the court [therefore] considered it appropriate to consider

the outstanding legal bill as damages incurred." Both the plaintiff and the defendants have appealed from the May 15, 2003 judgment of the court. Additional facts will be set forth where necessary.

## I

The defendants claim that the court improperly awarded attorney's fees to the plaintiff.[4] This claim contains three different components and arguments, each of which we will address in turn.

## A

First, the defendants claim that the court improperly made an award of attorney's fees to the plaintiff where there were neither contractual nor statutory provisions providing for such an award. The plaintiff counters that there exists both statutory and contractual grounds to support the award. We agree with the plaintiff.

The court awarded $52,157.81 in attorney's fees and costs to the plaintiff. This consisted of an award of $22,912.50 to cover the fees incurred by the plaintiff in defending its interest in the zoning enforcement action commenced by the city of Stamford against the defendants, $24,187.50 to cover the fees incurred in this foreclosure action and $5057.81 to cover expenses, of which $2076.21 was for the foreclosure action and $2981.60 was for the zoning action. The propriety of the award for fees in relation to the zoning action will be discussed in part I B of this opinion. We now address the award for fees and costs associated with this foreclosure.

"The question of whether a particular statute . . . applies to a given state of facts is a question of statutory interpretation . . . . Statutory interpretation presents a question of law for the court. . . . Our review is,

---

[4] The plaintiff did not seek, nor did the court award, attorney's fees or costs related to the withdrawn foreclosure action.

therefore, plenary. . . .[5] Connecticut case law follows the general rule, frequently referred to as the American Rule, that attorney's fees are not allowed to the prevailing party as an element of damages unless such recovery is allowed by statute or contract. . . . General Statutes § 52-249 (a)[6] succinctly and unambiguously provides for the allowance of attorney's fees in actions for foreclosure of mortgages or liens." (Citations omitted; internal quotation marks omitted.) *Original Grasso Construction Co.* v. *Shepherd,* 70 Conn. App. 404, 418, 799 A.2d 1083, cert. denied, 261 Conn. 932, 806 A.2d 1065 (2002).

Additionally, the mortgage document, itself, specifically provides: "17. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9,[7] Lender may foreclose this Security Instrument by judicial proceeding and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees and costs of title evidence."

Accordingly, we conclude, as a matter of law, that the plaintiff was entitled to recover attorney's fees in the foreclosure action, and the court properly made such an award.

## B

Second, the defendants claim that the court improperly awarded attorney's fees to the plaintiff for expenses

---

[5] The plaintiff states that our standard of review is the clearly erroneous standard. The defendants state that it is the abuse of discretion standard. We conclude, however, that because this claim concerns a matter of statutory interpretation, our review is plenary.

[6] General Statutes § 52-249 (a) provides in relevant part: "The plaintiff in any action of foreclosure of a mortgage or lien, upon obtaining judgment of foreclosure, when there has been a hearing as to the form of judgment or the limitation of time for redemption, shall be allowed the same costs, including a reasonable attorney's fee, as if there had been a hearing on an issue of fact. . . ."

[7] Paragraph nine of the mortgage document provides the grounds for debt acceleration, which includes default.

related to the zoning enforcement action commenced by the city of Stamford against the defendants.[8] The defendants argue that the plaintiff had no interest in that action because Stamford stipulated that its lien was inferior in right to the plaintiff's. The plaintiff responds that the mortgage contract allowed it to take whatever steps were necessary to protect its collateral and to recoup those fees and expenses related thereto. Additionally, it argues that the court in the zoning action had the power to impose a priority lien to demolish the building pursuant to General Statutes § 49-73b,[9] and,

---

[8] See *Stamford* v. *Stephenson*, 78 Conn. App. 818, 829 A.2d 26, cert. denied, 266 Conn. 915, 833 A.2d 466 (2003).

[9] General Statutes § 49-73b provides: "(a) Any municipality which has incurred expenses for the inspection, repair, demolition, removal or other disposition of any real estate in order to secure such real estate or to make it safe shall have the right to recover such expenses from the owner of the real estate for which such expenses were incurred.

"(b) The interest of each person in such real estate shall be subject to a lien for the payment of such expenses, which lien shall take precedence over any other encumbrance except municipal tax assessments on such real estate. No such lien shall be valid, unless the municipality, within thirty days after such work has ceased, files a certificate of such lien and gives notice to the owner of the real estate in the same manner as provided in section 49-34.

"(c) The interest of each person in the proceeds of any policy providing insurance coverage issued by an insurance company for a loss to a covered residential or commercial structure, including any policy written pursuant to the provisions of section 38a-670, shall be subject to a lien on such proceeds for the expenses incurred by a municipality pursuant to the provisions of subsection (a) of this section, provided such municipality, within thirty days after such work has ceased, files a certificate of such lien and gives notice to such interested person in the same manner as provided in section 49-34.

"(d) Any municipal lien filed pursuant to the provisions of this section may be foreclosed in the same manner as a mortgage.

"(e) Any certificate of lien filed pursuant to this section shall exist from the fifteenth day succeeding the date of entry of such certificate in the land records.

"(f) Any municipal lien filed pursuant to this section may be discharged or dissolved in the manner provided in sections 49-35a to 49-37, inclusive.

"(g) Nothing in this section shall prevent an insured owner, mortgagee, assignee or other interested party from negotiating a dissolution of any such lien on the insurance proceeds, enabling the insurance company to disburse said proceeds.

therefore, the plaintiff was simply taking steps to protect its collateral. We agree with the plaintiff.

"Where a contract provides for the payment of attorney's fees by a defaulting party, those fees are recoverable solely as a contract right. . . . Therefore, the language of the note governs the award of fees, and we need not consider . . . § 52-249 . . . . Such attorney's fees incurred language has been interpreted by our Supreme Court . . . as permitting recovery upon the presentation of an attorney's bill, so long as that bill is not unreasonable upon its face and has not been shown to be unreasonable by countervailing evidence or by the exercise of the trier's own expert judgment." (Citations omitted; internal quotation marks omitted.) *Connecticut National Bank* v. *N.E. Owen II, Inc.*, 22 Conn. App. 468, 476–77, 578 A.2d 655 (1990).

The mortgage document provides in relevant part: "6. Charges to Borrower and Protection of Lender's Right in the Property. . . . If . . . there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lenders' rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2. Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable."

This provision of the contract clearly gives the plaintiff the authority to "do and pay whatever is necessary"

---

"(h) The provisions of this section shall not apply to policies on single-family or two-family dwellings."

to protect its rights in the property. The document specifically gives as an example of legal proceedings, which may significantly affect the plaintiff's rights, those dealing with condemnation or enforcement of laws or regulations.

The court concluded that the mortgage specifically provided that the plaintiff may recoup the fees that it expended in protecting its rights in the property. After reviewing the record and the relevant law, we agree.

## C

Third, the defendants claim that the court improperly admitted hearsay documents in support of the plaintiff's claim for attorney's fees, which contained, but did not distinguish, fees charged in this matter from those charged in the zoning action commenced by the city of Stamford against the defendants in which the court permitted the plaintiff to intervene to protect its security interest in the premises. The defendants argue that because of this insufficient and improper evidence, the court could not assess the reasonableness of the fees. The plaintiff responds that the evidence in support of its request for attorney's fees was sufficient and that the defendants stipulated that testimony beyond an affidavit was not necessary. We agree with the plaintiff.

"[Our Supreme Court] long [has] held that there is an undisputed requirement that the reasonableness of attorney's fees and costs must be proven by an *appropriate evidentiary showing.* . . . [It] also [has] noted that courts have a general knowledge of what would be reasonable compensation for services which are *fairly stated and described* . . . and that [c]ourts may rely on their general knowledge of what has occurred at the proceedings before them to supply evidence in support of an award of attorney's fees. . . . Even though a court may employ its own general knowledge in assessing the reasonableness of a claim for attorney's

fees, we also have emphasized that no award for an attorney's fee may be made when the evidence is insufficient. . . .

"The weight of authority indicates that more than the trial court's mere general knowledge is required for an award of attorney's fees. . . . " (Citations omitted; emphasis in original; internal quotation marks omitted.) *Smith* v. *Snyder*, 267 Conn. 456, 471–72, 839 A.2d 589 (2004).

*Snyder* clarified our prior law and provided guidance to our trial courts and to this court when it held: "Accordingly, when a court is presented with a claim for attorney's fees, the proponent must present to the court at the time of trial or, in the case of a default judgment, at the hearing in damages, a statement of the fees requested and a description of services rendered. Such a rule leaves no doubt about the burden on the party claiming attorney's fees and affords the opposing party an opportunity to challenge the amount requested at the appropriate time.

"[This] holding . . . does not limit the trial court's ability to assess the reasonableness of the fees requested using any number of factors, including its general knowledge of the case, sworn affidavits or other testimony, itemized bills, and the like. . . . [T]he value [of reasonable attorney's fees] is based upon many considerations. . . .

"In addition, as a matter of good policy, [this] holding . . . establishes a paradigm within which all parties must act when pursuing a claim for attorney's fees. Perhaps, even more importantly, [this] holding eliminates the undesirable burden imposed upon the courts when a party seeks an award of attorney's fees predicated solely upon a bare request for such fees. Parties must supply the court with a description of the nature and extent of the fees sought, to which the court may

apply its knowledge and experience in determining the reasonableness of the fees requested." (Citations omitted; internal quotation marks omitted.) Id., 479–80.

In this case, the plaintiff submitted an affidavit of attorney's fees attesting that the hourly rate charged was $150 and that $23,062.50 in fees and $2076.21 in costs were attributable to the foreclosure action, and $22,912.50 in fees and $2981.60 in costs were attributable to the zoning action. The plaintiff also itemized the categories of attorney's fees for both the foreclosure action and the zoning action, listing such things as attendance at depositions, an application for a prejudgment remedy and a motion for summary judgment, etc. Individual amounts of time and costs for each of these enumerated items, however, were not listed, but the plaintiff did submit numerous pages of reprinted bills to the court. Moreover, on the close of the first day of trial, the plaintiff's counsel specifically asked, on the record, if the defendants had any objection to the requested attorney's fees and whether testimony was needed; the defendants' counsel responded that testimony was not necessary.[10]

---

[10] Specifically, the following colloquy took place:

"[The Plaintiff's Counsel]: If Your Honor please, I have some documentary submissions . . . . I have some other documents that I would like to offer into evidence, the pleadings from the prior foreclosure, and other than that we have evidence with respect to attorney's fees. I have an affidavit which I think counsel has agreed can come into evidence. We also have time records that support that affidavit. I would just ask that those be marked as exhibits at this time if there's no objection.

"[The Defendants' Counsel]: I don't object to them, Your Honor, but I do want to discuss them with Your Honor and point out certain things."

After a brief discussion about the timetable for the following day, the conversation continued:

"[The Plaintiff's Counsel]: Your Honor, just so I am prepared for tomorrow, does counsel have an objection to our attorney's fees? Do I need to bring a lawyer to examine me tomorrow?

"[The Defendants' Counsel]: No. We just need an explanation of what . . . fees are attributable to the defense of the city of Stamford case and this case.

"[The Plaintiff's Counsel]: And that breakdown is in the affidavit.

After reviewing the record, we conclude that the plaintiff supplied the court with a description of the nature and extent of the fees sought, to which the court applied its knowledge and experience and concluded that the requested fees were reasonable. See id., 479–80. Accordingly, we conclude that the court acted well within its discretion in making the award.

## II

The defendants' final claim on appeal is that the court abused its discretion by failing to offset and credit the unpaid principal balance of their note with the insurance proceeds retroactive to 1997. Specifically, they argue that the application of the check in 1997 would have mitigated damages and that it was the fault of the plaintiff that the parties never negotiated the check. The plaintiff responds that the court's findings were not clearly erroneous and that the defendants were not entitled to any setoff because the court specifically struck this request and the defendants judicially admitted the debt.

"The scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing

---

"The Court: Okay.

"[The Defendants' Counsel]: Okay.

"The Court: I take it [in] your view, you would argue that if it involved the Stamford zoning case, then it shouldn't be charged to your client.

"[The Defendants' Counsel]: How did you anticipate that, Your Honor?

"The Court: Okay.

"[The Defendants' Counsel]: Very good.

"The Court: And I'm sure [the plaintiff's counsel] is taking a different position; is that correct?

"[The Plaintiff's Counsel]: That's correct, Your Honor."

court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Carmel Hollow Associates Ltd. Partnership* v. *Bethlehem,* 269 Conn. 120, 149, 848 A.2d 451 (2004).

The court found the following additional facts, which are relevant to this claim. On October 16, 1996, the insurance company issued a check in the name of the defendants and the plaintiff for loss suffered to the Highview Avenue property. "This check was never negotiated and remains unpaid today. . . . Of course, had the check proceeds been used to pay down the mortgage balance, or even deposited in an interest bearing account, the parties would [have] benefited financially . . . .

"The Stephensons, however, have failed to prove that Atlantic was responsible for the failure to negotiate the check. Joseph Stephenson testified that he tried to give the check to Atlantic, but it was refused. This story rings hollow in light of his testimony that he wanted to cut a deal with Atlantic and use part of the proceeds for legal fees. The Stephensons, in fact, endorsed their interest in the check over to their attorney, Ridgely Brown, Esq. Brown wrote a letter to Atlantic saying that the Stephensons did not want the proceeds to pay down the principal, and in fact he would be looking to the $63,000 to pay his fee. . . . Reviewing all the evidence, the court concludes that while Atlantic could have done more to avoid having the check remain in unpaid limbo for seven years, the Stephensons have not produced evidence to prove their [CUTPA] claim. Indeed, the evidence shows that they were unwilling to give up the check except on their . . . terms." The court went on to order that the $63,946.34 insurance check be deposited in a trustee account, that the proceeds of the check be paid to the plaintiff and that this

amount be credited immediately against the defendants' debt.

Although the defendants argue that the court improperly failed to grant a setoff retroactive to 1997, they point to nothing in the record to counter the facts found by the court. The court specifically found that the failure to credit this check in 1997 was due to the defendants' unwillingness to apply the amount to their debt; they wanted the money used to pay their attorney. The defendants have not indicated anything in the record that demonstrates that this finding was erroneous.

On the basis of our independent review of the record, we conclude that the court's decision not to allow a setoff from 1997, but to allow only the proceeds from the check to be credited against the defendant's debt, was supported by the record and, therefore, is not clearly erroneous.

### III

On cross appeal, the plaintiff claims that the court improperly found it liable for abuse of process because (1) there was no evidence of improper motive and (2) the defendants should have been judicially estopped from raising an abuse of process claim. The defendants argue that the plaintiff mischaracterizes the judgment in that the court rendered judgment on their breach of the implied covenant counterclaim, as they did not bring a specific claim for abuse of process, and that the evidence supports the court's judgment and award of damages. At oral argument before this court, however, the defendants conceded that although the court's May 15, 2003 memorandum of decision specifically stated that it found for the defendants on their claim for breach of the implied covenant, the court's November 20, 2003 articulation specifically characterized its. judgment against the plaintiff as abuse of process.[11]

---

[11] In its May 15, 2003 decision, the court stated that it found "that the actions of [the plaintiff in] rushing to suit on an ill-considered cause of

In its reply brief, the plaintiff advances an alternative argument stating: "The Superior Court's decision states it is addressing two theories: abuse of process and breach of the implied covenant of good faith and fair dealing. . . . [I]n the event that [the Appellate Court] finds that the legal theory under which the trial court awarded damages is based upon a breach of the implied covenant of good faith and fair dealing, the award of legal fees cannot stand as it contradicts the express written terms of the loan documents in this case."

After thoroughly reviewing the court's memoranda, we conclude that the court held, as it specifically stated in its May 15, 2003 memorandum of decision, that the plaintiff was liable for breach of the implied covenant. We also conclude, on the basis of the November 20, 2003 articulation, that the court found the process employed by the plaintiff in the first foreclosure action to be the basis of this breach.[12] Accordingly, we will review the plaintiff's cross appeal only as it relates to the damages awarded on the breach of the implied covenant counterclaim.

In this case, the plaintiff does not contest the findings or the legal conclusions of the court as they relate to

action and then not even preparing the case for trial was a breach of the implied covenant of good faith and fair dealing. . . . The court finds the amount of $4615 to be the measure of damages for [the plaintiff's] breach."

In its motion for articulation, the plaintiff asked the court to "articulate its judgment of May 15, 2003, only as it relates to the findings on the counterclaim in which the court found a breach of the implied covenant of good faith and fair dealing and awarded damages."

In its November 20, 2003 articulation, the court stated in relevant part that "[t]he court also found for the defendants on their counterclaim of abuse of process and found against the defendants on their CUTPA claim. On the first counterclaim, the court awarded $4615.00 to the defendants."

[12] "[P]roper utilization of the motion for articulation serves to dispel any . . . ambiguity by clarifying the factual and legal basis upon which the trial court rendered its decision . . . . An articulation, however, is not an opportunity for a trial court to substitute a new decision [or] to change the reasoning or basis of a prior decision." (Citation omitted; internal quotation marks omitted.) *Miller* v. *Kirshner*, 225 Conn. 185, 208, 621 A.2d 1326 (1993).

its breach of the implied covenant. It only contests the propriety of the court's award of damages, in an amount equal to the outstanding legal bills of the defendants, on the ground that the award improperly contradicts the specific language of the contract.

The plaintiff claims that the damages award on the defendants' counterclaim for breach of the implied covenant was improper. The plaintiff argues that "the award of legal fees cannot stand as it contradicts the express written terms of the loan documents in this case." More specifically, it argues that "the loan documents provide that the [plaintiff] is to recover legal fees, not the defendants." We disagree with the plaintiff's reasoning.

We begin by setting forth our standard of review. "[W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision. . . . [T]he interpretation of the contract is a matter of law and our review is plenary." (Internal quotation marks omitted.) *Maloney* v. *PCRE, LLC*, 68 Conn. App. 727, 734, 793 A.2d 1118 (2002). However, "[t]he interpretation of a contract term that is not so clear as to render its interpretation a matter of law is a question of fact, subject to the clearly erroneous standard of review." (Internal quotation marks omitted.) *Middletown Commercial Associates Ltd. Partnership* v. *Middletown*, 53 Conn. App. 432, 434, 730 A.2d 1201, cert. denied, 250 Conn. 919, 738 A.2d 657 (1999).

In this case, the plaintiff specifically relies on paragraph seventeen of the mortgage to support its cross appeal. Paragraph seventeen provides: "Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding, and any other reme-

dies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees and costs of title evidence." Because this paragraph does not provide for the award of attorney's fee to the defendants, the plaintiff argues that such an award is contrary to the express terms of the agreement and, therefore, prohibited.

"[I]t is axiomatic that the . . . duty of good faith and fair dealing is a covenant implied into a contract or a contractual relationship. See *Magnan* v. *Anaconda Industries, Inc.*, 193 Conn. 558, 566, 479 A.2d 781 (1984); see also 2 Restatement (Second), Contracts § 205 (1981) ([e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement). . . . *Hoskins* v. *Titan Value Equities Group, Inc.*, 252 Conn. 789, 793, 749 A.2d 1144 (2000)." (Internal quotation marks omitted.) *De La Concha of Hartford, Inc.* v. *Aetna Life Ins. Co.*, 269 Conn. 424, 432, 849 A.2d 382 (2004). "The obligation of good faith and fair dealing extends to the assertion, settlement and litigation of contract claims and defenses. . . . The obligation is violated by dishonest conduct such as conjuring up a pretended dispute, asserting an interpretation contrary to one's own understanding, or falsification of facts." (Citation omitted.) 2 Restatement (Second), supra, § 205, comment (e).

"Determination of damages necessarily contemplates a finding that the breach was the cause of the damages claimed. It is hornbook law that to be entitled to damages in contract a plaintiff must establish a causal relation between the breach and the damages flowing from that breach. Such causal relation must be more than surmise or conjecture, inasmuch as a trier is concerned not with possibilities but with probabilities." (Internal quotation marks omitted.) *West Haven Sound Develop-*

*ment Corp.* v. *West Haven,* 207 Conn. 308, 314–15, 541 A.2d 858 (1988).

Although the plaintiff correctly characterizes paragraph seventeen of the note as giving it the contractual right to be reimbursed by the defendants for expenses incurred in a foreclosure proceeding, we are also mindful that the implied covenant is part of that contract and such proceedings should be carried out in accordance with that covenant. Additionally, we view nothing in the contract as prohibiting an *award of damages* to the defendants for the plaintiff's breach of the implied covenant, which is an implicit provision in every contract. The fact that damages consist of attorney's fees that the defendants would not otherwise have incurred were it not for the plaintiff's breach of the implied covenant does not lessen their essence as damages, which could be awarded for a breach. "[An] injured party has a right to damages for any breach by a party against whom the contract is enforceable unless the claim for damages has been suspended or discharged." 3 Restatement (Second), supra, § 346 (1). "The parties can by agreement vary the rules stated in this Section [of the Restatement], so long as the agreement is not invalid for unconscionability . . . or on other grounds." (Citation omitted.) Id., comment (a).

In *Celentano* v. *Oaks Condominium Assn.,* 265 Conn. 579, 616–18, 830 A.2d 164 (2003), our Supreme Court upheld a damages award that reimbursed money expended on legal fees where the landlords were found liable on a counterclaim for breach of the implied covenant contained in a lease contract. The Supreme Court explained that the trial court had concluded that the landlords' "conduct had caused the [defendant tenants] to incur damages, specifically, $3450 in additional legal expenses and, accordingly, awarded that sum to the defendants." Id., 617; see *Celentano* v. *Oaks Condominium Assn.,* Superior Court, judicial district of Water-

bury, Docket No. 159297 (January 11, 2001). The trial court had awarded the defendant tenants $3450 to cover their legal expenses that were directly related to the landlords' breach of the implied covenant. See id. It refused, however, to award the tenants attorney's fees in the case at hand. See *Celentano* v. *Oaks Condominium Assn.*, supra, Superior Court, Docket No. 159297.

Similarly, in the present case, the court did not award the defendants attorney's fees in the present foreclosure action. Rather, finding the previous conduct of the plaintiff to be a breach of the implied covenant, the court ordered the plaintiff to pay *damages* to the defendants in an amount equal to an outstanding legal bill, which the court found to have been incurred because of the plaintiff's breach of the implied covenant.

Specifically, in its May 15, 2003 decision, the court found that the plaintiff had commenced a foreclosure action against the defendants in 1997, alleging that the defendants had violated one of the mortgage covenants concerning compliance with zoning regulations. "In October, 2000, immediately prior to the scheduled trial of the action, Atlantic sought a continuance because it was not prepared to prove what had been alleged [in its complaint]. The continuance was denied. Faced with a dismissal, Atlantic withdrew the action and rather soon afterward commenced the present action to foreclose for nonpayment of the debt. From a litigation standpoint, this may have been the prudent choice. However, the poorly planned, considered and unprepared first lawsuit imposed expenses on the Stephensons in the form of legal fees for which they received little or no benefit. The court finds that the actions of Atlantic [in] rushing to suit on an ill-considered cause of action and then not even preparing the case for trial was a breach of the implied covenant of good faith and fair dealing. The Stephensons have put in evidence that they incurred legal fees in the amount of $4615. . . .

The court finds the amount of $4615 to be the measure of damages for Atlantic's breach."

Additionally, in its November 20, 1993 articulation, the court further explained that "[t]he record discloses that in over three years from the time the initial foreclosure suit was filed in 1997 to the scheduled date of trial in October, 2000, the plaintiff took few, if any, steps to obtain evidence supporting its claim that the defendants were not in compliance with the applicable zoning regulations. As a result, rather than face defeat in court, the plaintiff withdrew the action on the eve of trial. The plaintiff argues that it had the absolute right to withdraw the suit. The court has recognized that right. . . . But the right to withdraw the suit, when exercised, does not alter history or whitewash into nonexistence the fact that the defendants were forced to defend a lawsuit that the plaintiff conceded had no evidentiary merit. . . . The court found that it was manifestly improper to continue prosecution of the foreclosure case for three years to the brink of trial without any action to engage an expert necessary to prove the basic contention of the claim." (Citation omitted.) Accordingly, the court awarded damages to compensate the defendants for the plaintiff's breach of the implied covenant.

Furthermore, a review of the trial court's memorandum of decision and the record brings us to the conclusion that the court's finding that the plaintiff had breached the implied covenant was not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.