JAMES M. JANCEWICZ ET AL. *v.* 1721,
LLC, ET AL.
(AC 32719)

Beach, Espinosa and Peters, Js.

Argued October 26, 2011—officially released March 27, 2012

*Lloyd L. Langhammer*, with whom, on the brief, was *Kaitlyn M. Pechie*, for the appellants (plaintiffs).

*Ellen C. Brown*, for the appellee (named defendant).

*Opinion*

ESPINOSA, J. The plaintiffs, James M. Jancewicz and Kimberly A. Jancewicz, appeal from the trial court's judgment awarding the defendants, 1721, LLC (1721), and Daniel Del Grosso,[1] excess insurance proceeds stemming from a settlement of damages done to property owned by 1721, which is secured by a purchase money mortgage held by the plaintiffs. The plaintiffs claim that the court improperly (1) awarded the excess insurance proceeds to the defendants despite language in the mortgage directing that such proceeds be paid to the plaintiffs and (2) failed to award them attorney's fees on the defendants' unsuccessful counterclaim.[2] We affirm the judgment of the trial court.

---

[1] Del Grosso, a self-represented party at trial and on appeal, was a guarantor of 1721's obligation under the mortgage at issue, and the plaintiffs' complaint named him as a defendant. Del Grosso also signed the note and mortgage in his capacity as a member of 1721. We refer to 1721 and Del Grosso collectively as the defendants and individually by name where appropriate.

[2] The defendants' counterclaim alleged tortious interference with business opportunities and violations of the covenant of good faith and fair dealing and the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. The court rendered judgment for the plaintiffs on the counterclaim, stating that the defendants had failed to offer any evidence to support its allegations. The defendants initially cross appealed this decision but withdrew the cross appeal on December 21, 2010.

The following undisputed facts are relevant to our consideration of this appeal. In 2006, 1721 purchased from the plaintiffs certain property located at 495 East Main Street in Norwich (property). A small commercial building that formerly served as a pizza restaurant is located on the property. The plaintiffs took back a purchase money mortgage in the property as a part of the sale. The note secured by this mortgage became due and payable on March 1, 2009. When the note became due, 1721 was unable to make the required balloon payment, but it continued to make monthly payments.

On April 16, 2009, a car struck the building located at 495 East Main Street, damaging it. The city of Norwich issued a permit to the defendants on October 21, 2009, allowing them to repair the damage sustained by the building. The defendants repaired the building, expending $7000 to do so. Following the completion of the work, a building official for the city of Norwich certified that the building had been repaired. 1721 received an insurance proceeds check in the amount of $57,920.69, made payable to 1721 and the plaintiffs, which the defendants requested that the plaintiffs execute to pay for the repairs. The plaintiffs did not do so.

The plaintiffs initiated foreclosure proceedings against the defendants by a complaint filed November 16, 2009. The foreclosure was uncontested. During the foreclosure proceeding, the court found the total value of the property to be $145,000. The court established this valuation solely for the purpose of the foreclosure proceeding, and the parties agreed that they could submit different valuations at future proceedings.

At a hearing on July 28, 2010, the court found that the actual cost of the repairs, together with overhead, was $9400, and that the repairs fully restored the property. The court ordered that the plaintiffs pay the defendants this amount to compensate them for the repairs.

At a hearing on September 8, 2010, the court awarded the balance of the insurance proceeds to the defendants. The plaintiffs filed the present appeal on September 24, 2010. Additional facts will be set forth as necessary.

As the plaintiffs' claims require us to interpret the terms of the parties' mortgage deed, we conduct a plenary review. "Construction of a mortgage deed is governed by the same rules of interpretation that apply to written instruments or contracts generally, and to deeds particularly. The primary rule of construction is to ascertain the intention of the parties. This is done not only from the face of the instrument, but also from the situation of the parties and the nature and object of their transactions. . . . A promissory note and a mortgage deed are deemed parts of one transaction and must be construed together as such." (Internal quotation marks omitted.) *Webster Bank* v. *Oakley*, 265 Conn. 539, 547, 830 A.2d 139 (2003), cert. denied, 541 U.S. 903, 124 S. Ct. 1603, 158 L. Ed. 2d 244 (2004).

"Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." (Internal quotation marks omitted.) *Tallmadge Bros., Inc.* v. *Iroquois Gas Transmission System, L.P.*, 252 Conn. 479, 495, 746 A.2d 1277 (2000). "If a contract is unambiguous within its four corners, intent of the parties is a question of law requiring plenary review. . . . [When] the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. . . . [T]he individual clauses of a contract . . . cannot be construed by taking them out of context and giving them an interpretation apart from the contract of which they are a part. . . . A contract should be construed so as to give full

meaning and effect to all of its provisions . . . ." (Citation omitted; internal quotation marks omitted.) *FCM Group, Inc.* v. *Miller,* 300 Conn. 774, 811, 17 A.3d 40 (2011).

I

The plaintiffs first claim that the court improperly awarded the excess insurance proceeds to the defendants despite language in the mortgage directing that such proceeds be paid to the plaintiffs. The plaintiffs rely on language within paragraph four of the mortgage, which provides in relevant part:

"Unless [the plaintiffs] and [1721] otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and [the plaintiffs'] security is not lessened. If the restoration or repair is not economically feasible or [the plaintiffs'] security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to [1721]. If [1721] abandons the Property, or does not answer within 30 days a notice from [the plaintiffs] that the insurance carrier has offered to settle a claim, then [the plaintiffs] may collect the insurance proceeds. [The plaintiffs] may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

"Unless [the plaintiffs] and [1721] otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraph 1. If under paragraph 19 the property is acquired by [the plaintiffs], [1721's] right to any insurance policies and proceeds resulting from damage to the property prior to the acquisition shall pass to [the plaintiffs] to the extent of the sums

secured by this Security Instrument immediately prior to the acquisition."

The plaintiffs argue that, because the court found that their security was not lessened, the second sentence of paragraph four, which directs that excess insurance proceeds be distributed to 1721, does not apply. Rather, the plaintiffs assert that the first sentence of paragraph four applies, and that it, on its own, does not indicate to which party excess insurance proceeds are to be distributed. The plaintiffs assert that, in the absence of an express agreement providing for the distribution of the insurance proceeds, a mortgagee may apply insurance proceeds in satisfaction or reduction of the debt underlying the mortgage. According to the plaintiffs, the general rule that necessarily follows from this is that, absent satisfaction of the entire mortgage debt by the mortgagor, excess insurance proceeds must be distributed to the mortgagee when the mortgage does not contain an agreement to the contrary. We disagree with the plaintiffs' claim that there is no express agreement within the mortgage regarding the distribution of insurance proceeds and conclude that the mortgage unambiguously provides that such proceeds must be distributed to 1721.

We begin our analysis of the mortgage by considering whether any particular provision within it is dispositive of the issue before us. The court found that the plaintiffs had not "acquired" the property within the meaning of paragraph four of the mortgage, and the plaintiffs do not contest this finding on appeal. The court determined that this case presented a different factual situation from that contemplated by the language at the end of paragraph four, which provides that "[i]f under paragraph 19 the property is acquired by [the plaintiffs], [1721's] right to any insurance policies and proceeds resulting from damage to the property prior to the acquisition shall pass to [the plaintiffs] . . . ." We agree that,

as the plaintiffs have not acquired the property, this language is not dispositive of the issue before us.

Furthermore, the court found that the repairs made by the defendants fully restored the property and that the plaintiffs' security had not been lessened.[3] On the basis of these findings, which are not challenged on appeal, we agree with the court that the language in paragraph four that "[i]f the restoration or repair is not economically feasible or [the plaintiffs'] security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to [1721]" does not control the outcome of the present case.

The plaintiffs assert that the controlling language is the sentence of paragraph four that provides: "Unless [the plaintiffs] and [1721] otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and [the plaintiffs'] security is not lessened." Taken alone, this language appears to require nothing more than the use of insurance proceeds to repair or restore the property. Considering that the property has been restored fully, the mandates of this provision have been satisfied. Therefore, this language, considered in isolation, is not dispositive of the question of who is entitled to *excess* insurance proceeds. The plaintiffs argue that this language reflects the general principle that a mortgagee may apply insurance proceeds in satisfaction of the mortgage debt. Even if we accept this to be the general principle, we conclude that the particular mortgage deed before us unambiguously provides that excess insurance proceeds normally will be distributed to 1721.

---

[3] The plaintiffs claimed during oral argument before this court that this finding was clearly erroneous. We decline to review this claim, however, because the plaintiffs did not make such a claim in their brief. "We generally do not consider claims raised for the first time at oral argument." *Zenon* v. *Mossy,* 114 Conn. App. 734, 736 n.2, 970 A.2d 814 (2009).

Although no single provision of the mortgage deed is dispositive of the issue before us, the intent of the parties readily can be ascertained by considering paragraph four of the mortgage within the context of the entire deed. Paragraph four references "[1721's] right to any insurance policies and proceeds resulting from damage to the property . . . ." The mortgage does not reference any right in the plaintiffs to insurance proceeds, except in three enumerated circumstances: (1) where restoration or repair is economically unfeasible or the plaintiffs' security would be lessened; (2) if 1721 abandons the property or does not answer within thirty days a notice from the plaintiffs that the insurance carrier has offered to settle a claim; or (3) if the property is acquired by the plaintiffs. The mortgage, therefore, creates a right to insurance proceeds in 1721 that is altered only if one of three enumerated circumstances arises. As none of these circumstances occurred in the present case, the court correctly determined that any excess insurance proceeds should be distributed to the defendants.

## II

The plaintiffs next claim that the court improperly failed to award them attorney's fees on the defendants' unsuccessful counterclaim. We disagree.

The plaintiffs rely on paragraph six of the mortgage, which provides in relevant part: "If [1721] fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that m[a]y significantly affect [the plaintiffs'] rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then [the plaintiffs] may do and pay for whatever is necessary to protect the value of the Property and [the plaintiffs'] rights in the Property. [The plaintiffs'] actions may include paying real property

taxes, insurance premiums, any sums secured by a lien which has priority over this Security Instrument, and entering on the Property to make repairs. Although [the plaintiffs] may take action under this paragraph, [the plaintiffs do] not have to do so. To the extent that [the plaintiffs incur] legal fees or costs under this paragraph or to protect the lien of its mortgage, [1721] agrees to pay attorneys' fees and costs of [the plaintiffs]. . . ."

The following additional facts are relevant. On September 14, 2010, the court held a hearing regarding the issue of whether the plaintiffs were entitled to attorney's fees in connection with their defense of the defendants' unsuccessful counterclaim. The court found, contrary to the assertions of the plaintiffs, that the distribution of insurance proceeds did not affect the underlying property that secures the note. Determining that the mortgage provided for attorney's fees only to the extent that the plaintiffs incurred legal fees to protect the lien of the mortgage, the court found that the plaintiffs were not entitled to attorney's fees.

On appeal, the plaintiffs argue that paragraph six of the mortgage entitles them to attorney's fees incurred in their defense of the defendants' unsuccessful counterclaim. The plaintiffs assert that the counterclaim did not concern the debt, but that it concerned additional collateral securing the property, namely, the insurance. Therefore, according to the plaintiffs, their defense of the counterclaim constituted an action to protect the property and their rights in the property within the meaning of paragraph six of the mortgage.

Typically, parties must bear their own litigation expenses. E.g., *Traystman, Coric & Keramidas, P.C.* v. *Daigle*, 282 Conn. 418, 429, 922 A.2d 1056 (2007). "The general rule of law known as the American rule is that attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party

absent a contractual or statutory exception. . . . This rule is generally followed throughout the country. . . . Connecticut adheres to the American rule." (Citations omitted; internal quotation marks omitted.) *New Hartford* v. *Connecticut Resources Recovery Authority*, 291 Conn. 511, 517, 970 A.2d 583 (2009).

The plaintiffs rely on *Atlantic Mortgage & Investment Corp.* v. *Stephenson*, 86 Conn. App. 126, 860 A.2d 751 (2004), in support of their argument that they are entitled to attorney's fees. In *Atlantic Mortgage & Investment Corp.*, the mortgage at issue contained a clause similar to paragraph six of the mortgage in the present case, providing for payment by the mortgagor of attorney's fees incurred by the mortgagee in any "legal proceeding that may significantly affect [the mortgagee's] rights in the Property . . . ." (Internal quotation marks omitted.) Id., 134. The trial court in that case had awarded attorney's fees to the mortgagee in connection with a zoning enforcement action brought by a municipality against the mortgagor. Id., 132–34. On appeal, this court held that the award was proper because, in the zoning enforcement action, the municipality had the ability to impose a priority lien to demolish the building that was the subject of the mortgage. Id., 133–35. This court concluded that the mortgagee, in defending against the zoning enforcement action, had been acting to protecting its rights in the property. Id.

We conclude that the facts in the present case are distinguishable from those in *Atlantic Mortgage & Investment Corp.* The mortgagee in that case clearly was acting to protect its rights in the subject property when the legal proceeding at issue could have resulted in the property being demolished. There was no such proceeding in the present case; here, the issue was solely the appropriate distribution of insurance proceeds. This distribution in no way affected either the title to or the value of the property. Therefore, the

defendants are not responsible for attorney's fees under the mortgage.

Our result is supported by our Supreme Court's decision in *Voll* v. *Lafayette Bank & Trust Co.*, 223 Conn. 419, 613 A.2d 266 (1992). The mortgage in *Voll* contained language similar to the provisions in both *Atlantic Mortgage & Investment Corp.* and the present case. Id., 425–26. In *Voll*, the mortgagee claimed that it was entitled to attorney's fees in an action in which the mortgagors unsuccessfully attempted to enforce a prepayment clause. Id. The mortgagee argued that the action concerned its rights in the property because, had the mortgagors been successful, they could have prepaid the loan in satisfaction of the debt, extinguishing the mortgagee's rights in the mortgage. Id., 427. Our Supreme Court disagreed, holding that this issue concerned only the debt underlying the mortgage, not the mortgagee's security interest in the mortgaged property. Id. The same can be said of the distribution of insurance proceeds in the present case. The defendants' counterclaim alleged tortious interference with business opportunities and breaches of the covenant of good faith and fair dealing and the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. None of these claims could impact the value of the property or the plaintiffs' rights in the property. As in *Voll*, which dealt with language similar to that in the mortgage at issue here, the plaintiffs were not entitled to attorney's fees for defending against the counterclaim.

The plaintiffs, without distinguishing *Voll*, assert that insurance is additional collateral procured to protect the debt in accordance with the mortgage, and, therefore, that claims regarding insurance concern the property. The plaintiffs' argument would be persuasive if this were a case in which they, as mortgagee, purchased insurance in light of the mortgagor's failure to do so as required by the mortgage. In that case, and applying

the rationale of *Voll,* their purchase of insurance clearly would be an action taken to protect the mortgaged property. That is not the case here, however. Here, we are presented with the issue of the distribution of proceeds from properly obtained insurance; this is an inquiry distinct from whether the purchase of insurance in the first place implicates the mortgagee's rights in the property.

The judgment is affirmed and the case is remanded for the purpose of setting new law days.

In this opinion the other judges concurred.