JOSEPH G. VOLL ET AL. *v.* LAFAYETTE BANK AND
TRUST COMPANY, TRUSTEE
(14346)

PETERS, C. J., CALLAHAN, GLASS, COVELLO and BORDEN, Js.

420

Argued June 3—decision released August 11, 1992

*Matthew B. Woods,* for the appellant-appellee (defendant-third party plaintiff).

*Michael A. D'Amico,* for the appellees-appellants (plaintiffs).

CALLAHAN, J. The issues in this appeal and cross appeal arise out of a promissory note and mortgage deed executed by the plaintiffs, Joseph and Antoinette Voll, in favor of the defendant-third party plaintiff,

Lafayette Bank and Trust Company (bank), acting as trustee of the retirement account of the third party defendant, Alex Klein. The plaintiffs brought this action, seeking the discharge of the mortgage they had executed in favor of the bank. See General Statutes §§ 49-8 and 49-13. The bank subsequently impleaded Klein as a third party defendant, seeking indemnification for any damages recoverable by the plaintiffs in the principal action and for other damages, costs and attorneys' fees. Thereafter, the bank filed an answer, three special defenses and a counterclaim, which sought the reformation of the note and the recovery of attorneys' fees from the plaintiffs. After a trial to the court, at which a jury assisted the court in making certain findings of fact,[1] the court rendered judgment in favor of the bank on both the complaint and the counterclaim, except that the court did not hold the plaintiffs liable for the bank's attorneys' fees, and in favor of the bank on the third party complaint, ordering Klein to reimburse the bank for the legal expenses it had incurred.

The bank appealed from that judgment,[2] claiming that the trial court improperly concluded that the plaintiffs were not liable for the bank's attorneys' fees. The plaintiffs cross appealed, arguing that a new trial should be ordered because the trial court improperly: (1) failed to instruct the jury on the issue of whether Klein or the bank had been negligent in the loan transaction; (2) instructed the jury on the question of whether Antoinette Voll had ratified the conduct of her husband; and (3) gave the jury a "*Secondino* charge" with respect to the plaintiffs' failure to call Antoinette Voll to testify at the trial. We affirm the judgment.

[1] See General Statutes §§ 52-218 and 52-219; Practice Book §§ 308 and 309.

[2] The bank appealed to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

The trial court could reasonably have found the following facts. On October 10, 1984, the plaintiffs executed a promissory note for $82,000 in favor of the bank as trustee for Klein's retirement account. On the same day, the plaintiffs executed a mortgage deed in favor of the bank, as Klein's trustee, securing the debt with certain property owned by the plaintiffs.[3] Joseph Voll, Antoinette Voll, Klein and a representative from the bank were present during the transaction, which occurred on the bank's premises.

Before the plaintiffs executed the documents, Klein began to read the mortgage deed and noticed a prepayment provision in the first paragraph.[4] He objected to the provision on the basis of his understanding that the parties had agreed that the loan could not be prepaid before it was due in October, 1991, and insisted that the document be redrafted. Because of certain time constraints, Joseph Voll suggested that they simply delete the prepayment term and initial the change. Klein agreed. The provision was then deleted from the mortgage deed and the deletion initialed by Joseph Voll and Klein. Joseph Voll assured Klein that he did not have to take the time to read the remainder of the mortgage deed since it contained standard language. Relying on Voll's assurance, Klein then turned to the promissory note, where he noticed a similar prepayment provision in the first paragraph.[5] Joseph Voll and Klein crossed out that provision and initialed the change. After initialing the deletion in the first paragraph of the note, Klein indicated that the documents were acceptable to him because he assumed, without reading the remainder of the note, that, like the mortgage deed, the remaining paragraphs contained standard provisions.

[3] The plaintiffs' attorney prepared both the promissory note and the mortgage deed.

[4] Referring to the underlying debt, the provision stated "if not paid earlier."

[5] Referring to the debt, the provision stated "if not sooner paid."

The plaintiffs then executed the documents, and Klein authorized the bank's representative to disburse a check for $82,000 from his retirement account. Although Antoinette Voll was present while her husband and Klein discussed striking out the two prepayment clauses, she did not participate in the discussion or initial either change. She did, however, sign both documents without objection.

Unbeknownst to Klein, the third paragraph of the note contained another provision allowing for prepayment of the loan, which had not been deleted.[6] Relying on that provision, the plaintiffs sent a check to the bank in an attempt to prepay the loan approximately six years before the 1991 due date. When the bank contacted Klein to obtain his authorization to accept the prepayment and to discharge the mortgage, Klein responded by letter, directing the bank to refuse the prepayment and agreeing to indemnify the bank for "any costs or liability you incur in connection with this matter."[7] When the bank, in accordance with Klein's direction, refused to accept the prepayment and to discharge the mortgage, the plaintiffs instituted this action against the bank. The bank in turn impleaded Klein as a third party defendant.

---

[6] The provision stated: "Borrower may prepay the principal amount in whole or in part, and the Note holder shall impose no penalty for such prepayment."

[7] The relevant text of the letter states:

"I hereby direct you, as Trustee of my Keogh Plan, to refuse any payment of principal made by Joseph G. Voll and Antoinette P. Voll which is in excess of the payment currently due on the promissory note of Joseph G. Voll and Antoinette P. Voll, in the original principal amount of $82,000 and dated October 10, 1984.

I agree to hold you harmless and to indemnify you for any costs or liability you incur in connection with this matter.

Very truly yours,

[signature]
Alex Klein"

At trial, the plaintiffs presented evidence to support their claim that the parties had agreed that prepayment of the debt would be allowed in accordance with the remaining prepayment provision in the note, despite the deletion of other prepayment language from the note and the mortgage deed. The bank presented contrary evidence to support its counterclaim that the promissory note, as executed, was the result of the unilateral mistake of Klein coupled with fraudulent or inequitable conduct on the part of the plaintiffs.[8] It sought to have the note reformed to delete the prepayment language because, it claimed, the note did not reflect the parties' agreement that prepayment would not be permitted. On the third party complaint, the bank introduced Klein's letter into evidence to support its claim that Klein was liable for any damages that might be recovered by the plaintiffs and for any litigation costs incurred by the bank in connection with the suit. Klein interposed a defense that he wrote the letter while under the duress of a bank employee.

After all the evidence had been presented, the trial court instructed the jury and submitted six interrogatories to it. The trial court adopted the findings of the jury as expressed by the answers to the interrogatories,[9] rendering judgment for the bank on the complaint, the counterclaim and the third party complaint

---

[8] The bank also asserted in its counterclaim that the prepayment provision in the note was the result of the mutual mistake of the parties. The jury rejected this theory; see footnote 9, infra; and the trial court rendered judgment in accordance with the jury's finding in this regard.

[9] The six interrogatories and the jury's responses to them follow:

"1. DID THE VOLLS PROVE BY THE FAIR PREPONDERANCE OF THE EVIDENCE THAT THEY TENDERED FULL PAYMENT AND THAT THE BANK REFUSED THE PAYMENT?
YES _X_ NO ___

2. DID THE BANK PROVE BY CLEAR, CONVINCING, AND UNEQUIVOCAL EVIDENCE THAT THE PARAGRAPH WHICH PERMITS

against Klein. The court did not, however, order the plaintiffs to pay the bank's attorneys' fees.

## I

The sole issue in the bank's appeal is whether the trial court properly concluded that the plaintiffs were not required to pay the bank's attorneys' fees.[10] The bank bases its claim for attorneys' fees on paragraph 7 of the mortgage deed, which provides in relevant part: "Protection of Lender's Rights in the Property; Mortgage Insurance. If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such

PREPAYMENT IS IN THE NOTE BY REASON OF MUTUAL MISTAKE MADE BY MR. KLEIN AND MR. & MRS. VOLL?

YES ___    NO _X_

IF YOU ANSWER QUESTION NUMBER TWO YES, GO DIRECTLY TO QUESTIONS FIVE AND SIX AND OMIT THREE AND FOUR.

3. DID THE BANK PROVE BY CLEAR, CONVINCING, AND UNEQUIVOCAL EVIDENCE THAT THE PARAGRAPH WHICH PERMITS PREPAYMENT IS IN THE NOTE BY REASON OF MISTAKE COUPLED WITH FRAUD OR INEQUITABLE CONDUCT BY MR. VOLL?

YES _X_    NO ___

ONLY ANSWER QUESTION 4 IF ANSWER TO QUESTION 3 IS YES.

4. DID MRS. VOLL RATIFY MR. VOLL'S CONDUCT?

YES _X_    NO ___

5. DID MR. KLEIN AGREE TO REIMBURSE THE BANK FOR LEGAL FEES INCURRED IN DEFENDING MR. & MRS. VOLL'S CLAIM?

YES _X_    NO ___

6. DID MR. KLEIN SIGN THE INDEMNITY LETTER WHILE UNDER DURESS CAUSED BY A BANK EMPLOYEE?

YES ___    NO _X_ "

[10] The plaintiffs do not argue that the bank has already recovered its attorneys' fees from Klein by executing on its judgment against him. Indeed, at oral argument, the bank's attorney represented to the court that he had not yet attempted to collect the attorneys' fees from Klein. We therefore do not address the issue of double recovery in deciding whether the bank was entitled to recover its attorneys' fees from the plaintiffs.

as a proceeding in bankruptcy, probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. . . . Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. . . .'' The bank claims that the attorneys' fees it expended in connection with the plaintiffs' action for discharge of the mortgage and its counterclaim for reformation of the promissory note are recoverable under the provisions of paragraph 7 as amounts disbursed to protect the bank's rights in the mortgaged property. The plaintiffs maintain that the reimbursement provision of paragraph 7 does not apply to the attorneys' fees expended by the bank in this case because the issue in this case was whether the plaintiffs could prepay the debt, and resolution of that issue could not in any way affect the property that was the subject of the mortgage securing the debt. We agree with the plaintiffs that the plain language of paragraph 7 does not contemplate the plaintiffs' payment of attorneys' fees under these circumstances.

"A contract is to be construed according to what may be assumed to have been the understanding and intention of the parties." *Ginsberg* v. *Mascia,* 149 Conn. 502, 505–506, 182 A.2d 4 (1962). The intention of the parties is a question of fact to be determined "from the language of the contract, the circumstances attending its negotiation, and the conduct of the parties in relation thereto." *Kakalik* v. *Bernardo,* 184 Conn. 386, 393, 439 A.2d 1016 (1981). The trial court's finding of fact with respect to intent is reversible on appeal only if the court's finding was clearly erroneous. *A. Dubreuil & Sons, Inc.* v. *Lisbon,* 215 Conn. 604, 609–10, 577 A.2d 709 (1990); *Kakalik* v. *Bernardo,* supra.

It is reasonable to read paragraph 7, which is entitled "Protection of Lender's Rights in the Property; Mortgage Insurance," as intended to ensure that the property serving as collateral for the debt will be properly maintained by giving the mortgagee the right to take steps to protect its security interest in that property. Indeed, the bank conceded at oral argument that, unlike a more general provision allowing for reimbursement of all litigation costs in connection with a loan, a provision of this sort is generally employed to entitle a mortgagee to recoup moneys expended for taxes, insurance or other carrying costs on the property or for litigation affecting the title to or value of the property.

The bank argues, nevertheless, that this action affected its rights in the property because it threatened to extinguish those rights completely if the plaintiffs had been allowed to prepay the loan. In other words, the bank contends that its interest in the property was threatened because it might have had to accept prepayment in satisfaction of the debt and, as a result, to discharge the mortgage once the debt no longer existed. Adopting this interpretation of paragraph 7 would convert the provision, which was obviously designed to allow the bank to take reasonable measures to protect its security interest in the mortgaged property, into a much broader provision allowing for the recovery of attorneys' fees in any dispute, whether it directly pertained to the mortgaged property or simply involved the underlying debt and thus only tangentially affected the bank's interest in the property. The trial court's rejection of this interpretation was not clearly erroneous. Accordingly, we hold that the plaintiffs were not liable to the bank for its attorneys' fees because this litigation involved only the underlying debt and did not affect the bank's security interest in the mortgaged property except insofar as it determined whether the debt still existed.

## II

The first issue raised by the plaintiffs in their cross appeal is whether the trial court improperly refused to charge the jury that it could not find unilateral mistake on the part of the bank, as Klein's trustee, coupled with fraudulent or inequitable conduct by the plaintiffs, if it found that Klein had acted negligently in the loan transaction by failing to read the entire promissory note and mortgage deed at the time of their execution. This claim was adequately preserved for appeal since the plaintiffs submitted a proper request to charge on the issue and duly excepted to the trial court's failure to give the requested instruction. We conclude that the trial court was correct in refusing to give the instruction.

In *Essex* v. *Day,* 52 Conn. 483, 1 A. 620 (1885), this court held that the unquestionable negligence of certain town officials in not reading the text of bonds before they were issued did not operate to bar the town from obtaining a reformation of those bonds in order to correct an error therein, where the defendant bondholder had received one of the bonds knowing of the mistake and had then sought to use the error to his advantage. Of the town officials' failure to read the text of the bonds and its impact on the equitable claim for reformation of the bonds, Justice Loomis wrote: "There is here unquestionably a reprehensible carelessness; a lack of intelligent attention to the matter that must be regarded as not only unreasonable but culpable. We have no disposition to defend, or even to excuse, such conduct. . . . This negligence is not of that extremist kind which the courts sometimes characterize as the equivalent of fraud. It was not recklessness; it was mere want of care. . . . It is to be classed only with those incautious and unbusiness-like acts which are constantly presenting themselves and would not have been noticed

but for some mischief that they have wrought. Thus a man carelessly signs a note for a thousand dollars which he supposed to be for a hundred dollars. Through a mistake of the scrivener it is thus written, when he had directed that it be written a hundred, and he signs it without reading it. This is certainly gross carelessness; but should it debar him from all remedy against a party who receives the note knowing of the mistake? Would not a court of equity enjoin the holder who took it with full knowledge against its collection? Would it be good in his hands, in any court admitting of equitable defences, for more than a hundred dollars? We think therefore that the negligence of the plaintiffs in the execution and issuing of the bonds, was not of such a character as to preclude all equitable relief against the present defendant." Id., 492–93.

Because the reasoning of *Essex* v. *Day* applies equally to the circumstances of this case, the trial court properly refused to charge the jury that a finding of negligence on the part of Klein could defeat the bank's claim for reformation of the note based on its unilateral mistake coupled with fraud or inequitable conduct by the plaintiffs. See also *Cherkoss* v. *Gasser,* 123 Conn. 368, 195 A. 737 (1937) (negligence of one party did not bar reformation of a deed where there was mutual mistake as to terms of the deed and other party was not prejudiced thereby); *Geremia* v. *Boyarsky,* 107 Conn. 387, 140 A. 749 (1928) (contractor's negligent mathematical error did not preclude rescission of the contract because homeowner knew of the mistake and was not prejudiced thereby). Adopting the plaintiffs' view would reward fraudulent conduct at the expense of one whose mere carelessness had caused him unwittingly to agree to terms not contemplated by the parties. Equity should not sanction such an unconscionable result. Consequently, we reject the plaintiffs' claim that the trial court should have instructed the jury on Klein's negli-

gence because a finding of such negligence by the jury would not have vitiated the bank's equitable claim for reformation of the promissory note.

## III

The next claim raised by the plaintiffs in their cross appeal challenges the propriety of the trial court's instruction to the jury that, in assessing the bank's counterclaim that the note should be reformed because of Klein's unilateral mistake coupled with fraud or inequitable conduct on the part of the plaintiffs, the jury should consider the circumstances surrounding the loan transaction to determine whether Antoinette Voll ratified the conduct of her husband in that transaction.[11] We are not persuaded that the instruction on ratification was improper.

Some background information is in order. The bank's original counterclaim alleged, inter alia, that the plaintiffs had engaged in fraud or inequitable conduct in

---

[11] The trial court instructed the jury as follows: "Fraud, for the purposes of this rule, includes concealment or nondisclosure by a party, who knows that the other party is acting under a mistake as to material facts. Both Mr. and Mrs. Voll signed the note. With respect to Mrs. Voll, I should discuss the Doctrine of Ratification.

" 'Ratification is the affirmance, approval by a prior act, which did not bind her, but which was done on her account. Ratification requires the acceptance of the result of the act, with full knowledge of all the material facts.' You should examine all the circumstances surrounding Mrs. Voll's participation in the closing transaction. Did she knowingly accept the results of any wrongful conduct on the part of her husband, with full knowledge of all the material facts? I do not mean to imply that there was, in fact, wrongful conduct. That is a decision, which you, alone, can make. The question you must answer on the alternative defense—actually there are two questions—are as follows: did the bank prove, by clear, convincing and unequivocal evidence, that the paragraph, which permits prepayment, is in the note by reason of mistake coupled with fraud or inequitable conduct by Mr. Voll? If the answer to that question is yes, then you should answer the following question: did Mrs. Voll ratify Mr. Voll's conduct? Your answers to the above questions will determine the validity of the Volls' claim."

their dealings with Klein in the loan transaction.[12] The counterclaim did not specifically allege, however, that Antoinette Voll had engaged in such conduct by ratifying her husband's behavior rather than by any act of her own that defrauded Klein.

Although Antoinette Voll did not testify at trial, evidence was admitted, without objection, that her husband handled the deal with Klein, that she was present when her husband and Klein discussed and then deleted and initialed two of the prepayment provisions in the note and mortgage deed, that she voiced no opposition to anything agreed to by her husband, that she signed the note and mortgage deed as modified and that she received and endorsed the $82,000 check after the modifications had taken place. After the plaintiffs had rested their case, the bank filed a supplemental request to charge[13] on the issue of Antoinette Voll's ratification of her husband's fraudulent or inequitable conduct. The court gave the requested instruction over the plaintiffs' objection that ratification had not been specifi-

[12] The counterclaim alleged in relevant part: "The Note failed to state the agreement of the parties due to: (a) The mutual mistake of the parties; or (b) The mistake of Klein coupled with fraud, actual or constructive, of the Plaintiffs, in that they knew Klein believed the loan could not be prepaid, represented to him through the transaction that the loan could not be prepaid, agreed to delete the language authorizing prepayment from the mortgage, failed to call Klein's attention to the prepayment paragraph in the Note after agreeing to delete other language in the Note authorizing prepayment, and assured Klein that the Note and Mortgage, after the two deletions in question, conformed to the parties' agreement that the loan could not be prepaid. (c) The mistake of Klein coupled with inequitable conduct on the part of the Plaintiffs, in that they knew Klein believed the loan could not be prepaid, represented to him through the transaction that the loan would not be prepaid, agreed to delete language authorizing prepayment from the mortgage, failed to call Klein's attention to the prepayment paragraph in the Note authorizing prepayment, and assured Klein that the Note and Mortgage, after the two deletions in question, conformed to the parties' agreement that the loan could not be prepaid."

[13] The bank had already filed several other requests to charge a few days before this supplemental request was filed.

cally alleged in the bank's counterclaim. The plaintiffs did not, however, move the court for permission to proffer additional evidence to rebut the claim of ratification. When the jurors had completed their deliberations, the trial court accepted their answers to the six interrogatories, including an affirmative response to the interrogatory regarding whether Antoinette Voll had ratified her husband's conduct, and excused them from further service.

Before the court issued its memorandum of decision in the case, the bank successfully moved for permission to amend its counterclaim "to conform the pleadings to the proof on the issue of ratification."[14] Thereafter, the plaintiffs filed a motion for a new trial or, in the alternative, for permission to introduce additional evidence on the issue of Antoinette Voll's ratification of her husband's conduct. The trial court denied the plaintiffs' motion.

The plaintiffs maintain that the charge on ratification was improper because the bank had not specifically alleged in its original counterclaim that Antoinette Voll had ratified the fraud or inequitable conduct of her husband.[15] They further contend that the court abused

[14] The amended counterclaim alleged Joseph Voll's fraudulent or inequitable conduct "as ratified by the Plaintiff, Antoinette P. Voll, in that she accepted the results of said conduct with an intent to ratify the same and with full knowledge of all the material circumstances."

[15] The plaintiffs also argue that the trial court should not have entertained the request to charge on ratification because it was filed five days after a deadline imposed by the court in chambers for the filing of requests to charge. Practice Book § 317 provides that "[w]ritten requests to charge the jury must be filed . . . before the beginning of the arguments or at such earlier time during the trial as the court directs . . . ." In this case, the bank filed its request to charge before closing arguments had begun, but after an earlier deadline set by the court. Section 317, which expressly empowers a trial court to establish an earlier deadline for the submission of requests to charge, impliedly empowers the court to modify its prior scheduling order. Indeed, this court has held that a trial court has discre-

its discretion in allowing the bank to amend its counterclaim after trial to add this essential allegation.[16] Even if we assume, without deciding, that it was necessary for the bank to allege affirmatively that Antoinette Voll had ratified her husband's conduct, we nonetheless conclude that the instruction was proper because the trial court did not abuse its discretion in allowing the bank's posttrial amendment to the counterclaim.

"[A] trial court may allow, in its discretion, an amendment to pleadings before, during, or as here, after trial to conform to the proof. *Wright* v. *Coe & Anderson, Inc.,* 156 Conn. 145, 155, 239 A.2d 493 (1968); *Thibault* v. *Frechette,* 135 Conn. 170, 173, 62 A.2d 863 (1948); cf. *Winsor* v. *Hawkins,* 130 Conn. 669, 670, 37 A.2d 222 (1944); General Statutes § 52-130 . . . ." *Saphir* v. *Neustadt,* 177 Conn. 191, 206, 413 A.2d 843 (1979). "Whether to allow an amendment is a matter left to the sound discretion of the trial court. This court will not disturb a trial court's ruling on a proposed amendment unless there has been a clear abuse of that discretion." *Falby* v. *Zarembski,* 221 Conn. 14, 24, 602 A.2d 1 (1992). "[W]here, as here, there is a variance between allegations in the [counterclaim] and the proof at trial, which is corrected by amendment to the [counterclaim], a judgment based on the amended [counterclaim] will not be set aside unless the variance misled or prejudiced the defendants on the merits of the case." *Saphir* v. *Neustadt,* supra, 208.

Applying these principles to the case before us, we conclude that the trial court properly exercised its discretion in permitting the posttrial amendment and in denying the plaintiffs' subsequent request to proffer

tion to consider a request to charge filed even after arguments have begun. *Zupanick* v. *Fielding,* 114 Conn. 345, 348–49, 158 A. 881 (1932); *Farrington* v. *Cheponis,* 84 Conn. 1, 9, 78 A. 652 (1911).

[16] The plaintiffs do not claim that there was insufficient evidence of Antoinette Voll's ratification of her husband's conduct.

further evidence. Once the bank filed its supplemental request to charge on ratification and the court indicated its intent to give the ratification instruction, the plaintiffs were on notice that the jury and the court would consider this issue in deciding the merits of the bank's counterclaim. They made no attempt to present additional evidence to rebut the claim of ratification at that time, but, instead, waited until after the court had accepted the jury's answers to the interrogatories, which were favorable to their opponent, and after it had excused the jurors from further service on the case. Such behavior suggests that, although the plaintiffs knew the issue of ratification would be submitted to the jury,[17] rather than immediately seeking permission to introduce evidence on that issue, they chose to hedge their bets in the hope that the jury would find in their favor. Given these circumstances, it was well within the trial court's discretion to deny the plaintiffs' post hoc request to present additional evidence on ratification. When pleadings are amended after trial merely to conform to the proof, the opposing party does not necessarily have the right to present further evidence unless the amendment injects a new, material issue into the case. *Azzolina* v. *Sons of Italy,* 119 Conn. 681, 688–89, 179 A. 201 (1935); *Mazulis* v. *Zeldner,* 116 Conn. 314, 317, 164 A. 713 (1933). Because the bank clearly raised the ratification issue at trial in its supplemental request to charge, the trial court instructed on that issue, and the court submitted an interrogatory to the jury on that issue, we conclude that the plaintiffs were not misled or prejudiced by the subsequent amendment to the bank's counterclaim after trial. Accordingly, we reject the claim that the trial court acted improperly in charging the jury on ratifi-

---

[17] One interrogatory queried the jurors about whether Antoinette Voll had ratified her husband's conduct. See footnote 9, supra.

cation, in granting the bank's motion for amendment with respect to ratification, or in denying the plaintiffs' motion to present evidence to rebut ratification.

## IV

The plaintiffs claim, finally, that they are entitled to a new trial because, upon Klein's request, the trial court improperly gave the jury a *"Secondino* charge," permitting the jury to draw an adverse inference from the plaintiffs' failure to call Antoinette Voll as a witness.[18] See *Secondino* v. *New Haven Gas Co.,* 147 Conn. 672, 165 A.2d 598 (1960). They premise their argument on an off-the-record agreement allegedly reached among the parties that, in the interest of saving time, no one would call Antoinette Voll to the witness stand. They claim that this agreement carried with it the implicit assurance that no missing witness instruction would be sought.[19] The bank vigorously disputes the existence of any such agreement. It claims that, when the plaintiffs' counsel asked whether either Klein or the bank intended to call Antoinette Voll, they both simply responded that they did not. According to the bank,

[18] The court instructed: "If a party fails to call to the stand a witness, who was within his power to produce and who would naturally have been produced by him, you are entitled to infer the witness' testimony would have been unfavorable to the party failing to call the witness. And you may consider that fact in arriving at your decision. During the arguments, the lawyers referred to the fact that Mrs. Voll was not called as a witness. There are two requirements for the operation of this rule. First, the witness must be available. Second, the witness must be a witness whom the party would naturally produce. A witness, who would naturally be produced by a party, is one who is known to that party and who, by reason of his or her relationship to that party, or to the issues, or both, could reasonably be expected to have peculiar or superior information, which would be material to the case and which, if favorable to the party, the party would have produced."

[19] Although the plaintiffs also seem to argue on appeal that the *Secondino* instruction should not have been given because Antoinette Voll was not a witness that the plaintiffs would naturally have produced, they did not advance this argument in the trial court. Consequently, we decline to consider it on appeal. See Practice Book § 4185.

there was no agreement, implicit or otherwise, that a *Secondino* charge would not be sought if the plaintiffs failed to call her. Because the parties disagree about whether such an agreement was in fact reached, and nothing before us indicates the existence of such an agreement, we reject the plaintiffs' claim in this regard as wholly unsubstantiated by the record.

The judgment is affirmed.

In this opinion the other justices concurred.