# JPMORGAN CHASE BANK, NATIONAL ASSOCIATION *v.* ROBERT J. VIRGULAK ET AL.
## (SC 20403)

Robinson, C. J., and McDonald, D'Auria, Mullins, Kahn and Ecker, Js.

*Syllabus*

The plaintiff bank, J Co., sought to foreclose a mortgage on certain real property owned by the defendant T. T's husband, R, had executed and delivered to J Co. a promissory note for a loan on December 11, 2006. T was not a signatory on the note. On the same date, T signed a mortgage deed for her property, which recited that it was given to secure a note dated December 11, 2006, that was signed by T as the borrower. The mortgage deed did not reference R. J Co. commenced its foreclosure action after the note went into default. J Co. subsequently withdrew the foreclosure action as to R, as he had been granted an unconditional discharge of the debt associated with the note in a separate bankruptcy proceeding. Thereafter, another bank, M Co., was substituted as the plaintiff, and it filed an amended complaint in which it sought, inter alia, a judgment of foreclosure and equitable reformation. The trial court rendered judgment for T on M Co.'s foreclosure and reformation claims, concluding that M Co. did not sustain its burden of proving, by clear

341 Conn. 750 FEBRUARY, 2022 751

JPMorgan Chase Bank, National Assn. *v.* Virgulak

and convincing evidence, that it was entitled to the equitable remedy
of reformation of the mortgage deed. M Co. appealed to the Appellate
Court, which affirmed the trial court's judgment. On the granting of
certification, M Co. appealed to this court. *Held*:

1. The Appellate Court properly upheld the trial court's decision declining
   M Co.'s request to reform the mortgage deed executed by T to reference
   the fact that it was given to secure a note executed by R, as this court
   could not conclude that the absence of a finding by the trial court that
   the parties intended the mortgage deed signed by T to secure R's note was
   clearly erroneous: the language of the mortgage deed, the circumstances
   surrounding the negotiation of the mortgage, and the conduct of the
   parties in relation to the mortgage deed and the note did not necessarily
   support M Co.'s claim that the parties intended the mortgage deed to
   secure the note signed by R, as the language of the mortgage deed did
   not mention R or any note executed by him, there was no evidence that
   M Co. or its predecessors in interest ever spoke with T prior to her
   execution of the mortgage deed or required her to secure the note as
   a condition of R's receipt of the net loan proceeds from the note, T did
   not attend the closing, and R used most of the proceeds he received to
   pay off credit cards that were his exclusive responsibility; moreover,
   although the mortgage deed referenced a note with the same date and
   in the same amount as the note that R signed, which M Co. claimed
   must be the note T agreed to secure, the evidence presented with respect
   to this issue fell short of the very high burden required to demonstrate
   mutual mistake, as M Co.'s immediate predecessor in interest acknowl-
   edged that T did not borrow any money from it or J Co., M Co. conceded
   that the mortgage deed was not intended to secure any note signed by
   T, and M Co. failed to present any testimony regarding whether J Co.
   intended T's signature on the mortgage deed to secure the note signed
   by R.

2. The Appellate Court properly upheld the trial court's determination that
   M Co. was not entitled to foreclose the mortgage executed by T because
   T was not a borrower on the note; there was no merit to M Co.'s claim
   that foreclosure was the proper equitable relief on the grounds that it
   was undisputed that T entered into a mortgage transaction and common
   sense dictated that she intended her property interest to serve as security
   for the note contemporaneously executed by R, as the mortgage deed,
   as executed, was a nullity because it secured a nonexistent debt, and,
   accordingly, this court could not conclude that M Co. was entitled to
   foreclose a mortgage for a debt for which T was not responsible and
   that was not referenced in the mortgage deed.

Argued October 22, 2020—officially released January 11, 2022*

* January 11, 2022, the date that this decision was released as a slip
opinion, is the operative date for all substantive and procedural purposes.

JPMorgan Chase Bank, National Assn. *v.* Virgulak

*Procedural History*

Action to foreclose a mortgage on certain real property owned by the defendant Theresa Virgulak, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the plaintiff withdrew the action as to the named defendant; thereafter, Manufacturers and Traders Trust Company was substituted as the plaintiff; subsequently, the case was tried to the court, *Hon. David R. Tobin*, judge trial referee, who, exercising the powers of the Superior Court, rendered judgment in part for the defendant Theresa Virgulak, from which the substitute plaintiff appealed to the Appellate Court, *Sheldon* and *Keller, Js.*, with *Bear, J.*, dissenting, which affirmed the trial court's judgment, and the substitute plaintiff, on the granting of certification, appealed to this court. *Affirmed.*

*Brian D. Rich*, with whom, on the brief, was *Laura Pascale Zaino*, for the appellant (substitute plaintiff).

*Alexander H. Schwartz*, for the appellee (defendant Theresa Virgulak).

*Jeffrey Gentes* and *J.L. Pottenger, Jr.*, and *Chaarushena Deb*, *Sophie Laing*, *Zaria Noble*, *Stefanie Ostrowski* and *Emily Coady*, law student interns, filed a brief for the Housing Clinic of the Jerome N. Frank Legal Services Organization as amicus curiae.

*Opinion*

MULLINS, J. The plaintiff, Manufacturers and Traders Trust Company (M&T Bank),[1] appeals from the judg-

---

[1] "The named plaintiff, JPMorgan Chase Bank, National Association . . . is no longer a party in this matter . . . [after filing] a motion to substitute Hudson City Savings Bank as the plaintiff, which the [trial] court granted on August 18, 2015. On August 9, 2016, M&T Bank filed a motion to substitute itself as the plaintiff, noting that it was the successor by merger to Hudson City Savings Bank. That motion was granted on August 15, 2016." *JPMorgan Chase Bank, National Assn.* v. *Virgulak*, 192 Conn. App. 688, 691 n.1, 218 A.3d 596 (2019). For convenience, we refer to M&T Bank as the plaintiff in this opinion.

JPMorgan Chase Bank, National Assn. *v.* Virgulak

ment of the Appellate Court in favor of the defendant Theresa Virgulak.[2] On appeal, the plaintiff claims that the Appellate Court improperly affirmed the judgment of the trial court because (1) the trial court improperly declined the plaintiff's request to reform a mortgage deed to reference that the mortgage deed executed by the defendant was given to secure a note executed by her husband, Robert J. Virgulak (Robert), and (2) even if the trial court properly denied the request to reform the mortgage deed, it incorrectly determined that the plaintiff was not entitled to foreclose the mortgage executed by the defendant because the defendant was not a borrower on the note. We disagree with the plaintiff and affirm the judgment of the Appellate Court.

The opinion of the Appellate Court sets forth the following relevant facts and procedural history. "On or about December 11, 2006, Robert . . . executed and delivered to JPMorgan Chase Bank, National Association (JPMorgan Chase), a note for a loan in the principal amount of $533,000 (note). The defendant was not a signatory on the note. On the same date, the defendant signed a document titled 'Open-End Mortgage Deed' (mortgage [deed]) for residential property she owns at 14 Bayne Court in Norwalk (property). The mortgage [deed] recited that it was given to secure a note dated December 11, 2006, and recited that the note was signed by the defendant as [the] '[b]orrower' in the amount of $533,000. The term '[b]orrower' is defined in the mortgage deed as '[Theresa Virgulak, married].' The mortgage [deed] did not reference Robert. The defendant did not sign any guarantee.

_____

[2] The original summons and complaint also listed the named defendant, Robert J. Virgulak, and the Department of Revenue Services as defendants. Subsequently, the named plaintiff, JPMorgan Chase Bank, National Association, withdrew the action against Robert J. Virgulak. Additionally, the Department of Revenue Services was defaulted for failure to plead. Therefore, in the interest of simplicity, we refer to Theresa Virgulak as the defendant.

JPMorgan Chase Bank, National Assn. *v.* Virgulak

"On or about February 1, 2010, after JPMorgan Chase failed to receive payments in accordance with the terms of the note, the note went into default and JPMorgan Chase elected to accelerate the balance due. On January 3, 2011, notices of default were sent to both the defendant and Robert, and, in February, 2013, JPMorgan Chase commenced this foreclosure action against the couple. The action sought to foreclose the mortgage that JPMorgan Chase claimed to have on the property. In September, 2014, JPMorgan Chase withdrew the foreclosure action against Robert, as he had filed for bankruptcy and been granted an unconditional discharge of the debt.

"Thereafter, JPMorgan Chase filed a motion to substitute party plaintiff, stating that it had assigned the subject mortgage deed and note to Hudson City Savings Bank (Hudson). This motion was granted by the [trial] court on August 18, 2015.

"On September 25, 2015, the defendant filed a motion for summary judgment, arguing that Hudson was precluded from foreclosing the mortgage. In particular, she argued that she had not defaulted under the terms of the note because she was never a party to a promissory note with [Hudson] or any of its predecessors in interest. The motion was denied by the court on January 14, 2016, on the basis of the court's determination that an issue of material fact remained with respect to whether the mortgage deed provided reasonable notice to third parties that the defendant was securing Robert's obligation." *JPMorgan Chase Bank, National Assn.* v. *Virgulak*, 192 Conn. App. 688, 692–93, 218 A.3d 596 (2019).

"On August 9, 2016, the plaintiff, M&T Bank, into which Hudson had merged, filed a motion to substitute itself as the party plaintiff and requested leave to amend the complaint in order to add two additional causes of

JPMorgan Chase Bank, National Assn. *v.* Virgulak

action. The court granted the motion on August 15, 2016. In the first count of the plaintiff's three count amended complaint, the plaintiff sought a judgment of foreclosure against the [defendant]. In the second count, it sought equitable reformation of the note in order to include the defendant as a borrower on the note. In the third count, the plaintiff pleaded that the defendant had been unjustly enriched because (1) the proceeds of the note were used to pay off loans [that] she was obligated to pay and (2) she had free use of the subject property without satisfying the terms of the mortgage [deed], which she had executed.

"On December 1, 2016, the defendant filed an amended answer denying the essential allegations of the amended complaint regarding her liability for the debt and the claim of unjust enrichment. She also set forth eight special defenses." (Footnote omitted.) Id., 693–94.

"The parties tried the case before the court on December 6, 2016. The plaintiff presented three witnesses, including Wilkin Rodriguez, a mortgage banking research officer at JPMorgan Chase, the defendant, and Robert. After the plaintiff rested, the defendant did not present additional evidence; she relied instead on the testimony and exhibits introduced during cross-examination of the witnesses called by the plaintiff." Id., 694. The trial court ordered the parties to submit posttrial briefs.

"On April 12, 2017, the court issued its memorandum of decision. The court found in favor of the defendant on the foreclosure and reformation counts of the complaint. In particular, the court stated, among other things, that '[t]he court finds that the plaintiff has not sustained its burden of proving, by clear and convincing evidence, that it [was] entitled to the equitable remedy of reformation of the mortgage deed[3] . . . . Accord-

_____

[3] The trial court explained the following in its memorandum of decision: "[I]n the second count of its complaint, the plaintiff seeks reformation of the [note] but not the mortgage deed. However, on page 7 of its posttrial brief . . . the plaintiff concedes: 'Quite simply, there is . . . no support

JPMorgan Chase Bank, National Assn. *v.* Virgulak

ingly, the court finds the issues on the second count
for [the defendant] and against the plaintiff. [Because]
the plaintiff failed to present any authority to the court
[that] would allow the plaintiff to prevail on the first
count [foreclosure claim] in the absence of reformation
of the mortgage deed, the court [also] finds the issues
on the first count for [the defendant] and against the
plaintiff.'

"The court then proceeded to address the plaintiff's
unjust enrichment claim, noting that the defendant had
been benefited in several respects as a result of the loan
that Robert had obtained . . . . The court ultimately
determined that [Hudson's] responses to the requests
for admissions precluded any recovery on [the plain-
tiff's] unjust enrichment claim, except for the property
tax payments that the defendant conceded that she
owed to the plaintiff."[4] (Footnote added; footnote omit-

for any notion that the mortgage [deed] was ever intended to secure a note
executed by [the defendant].' According to the [posttrial] brief, it is now
the plaintiff's position that the mortgage deed should be reformed 'to refer-
ence the fact that the mortgage [deed] executed by [the defendant] was to
secure the note executed by Robert.' " (Citation omitted; footnote omitted.)

In its posttrial brief, the plaintiff asserted that the trial court should
consider its new position that the mortgage deed, rather than the note,
should be reformed because, "in an equitable proceeding such as a mortgage
foreclosure, the trial court may consider equitable principles, even though
they may not have been specifically pleaded, and may consider all relevant
circumstances to [e]nsure that complete justice is done." (Internal quotation
marks omitted.)

Even though the plaintiff did not plead in its complaint that it was entitled
to reformation of the mortgage deed, the trial court considered that claim
and ultimately concluded that "the plaintiff has not sustained its burden of
proving, by clear and convincing evidence, that it is entitled to the equitable
remedy of reformation of the mortgage deed . . . ." (Citation omitted.) The
defendant does not assert that it was improper for the trial court or the
Appellate Court to consider reforming the mortgage deed instead of the
note, so we also consider that claim.

[4] In its response to the defendant's request for admissions, Hudson, the
plaintiff's predecessor in interest, admitted, inter alia, that the defendant
did not borrow any money from Hudson or JPMorgan Chase and did not
owe them any money. See *JPMorgan Chase Bank, National Assn.* v. *Virgu-
lak,* supra, 192 Conn. App. 715–16. Approximately two weeks after trial, the

JPMorgan Chase Bank, National Assn. *v.* Virgulak

ted.) Id., 695–97. Thereafter, the plaintiff appealed from the judgment of the trial court to the Appellate Court.

On appeal to the Appellate Court, the plaintiff claimed, inter alia, that the trial court (1) improperly failed to exercise its discretion to consider the plaintiff's foreclosure claim as independent from its other claims and failed to grant the plaintiff the equitable remedy of foreclosure, (2) improperly declined to reform the mortgage deed, and (3) incorrectly concluded that Hudson's admissions limited the plaintiff's recovery under its unjust enrichment count. See id., 691–92. The Appellate Court affirmed the judgment of the trial court. Id., 722. It concluded, inter alia, that the trial court (1) "did not ignore the plaintiff's claim for foreclosure"; id., 700–701; (2) properly "declined to grant foreclosure of the mortgage without reformation because it determined that the mortgage [deed], as executed, was a nullity because it secured a nonexistent debt"; id., 703; see id., 705; (3) did not abuse its discretion by declining to reform the mortgage deed because the plaintiff did not meet its burden of proving by clear and convincing evidence that the mortgage deed did not conform to the parties' agreement; see id., 706; and (4) "did not abuse its discretion in limiting the award under the unjust enrichment count to the property taxes owed to the plaintiff." Id., 721.

We granted the plaintiff's petition for certification to appeal, limited to the following issues: (1) "Did the Appellate Court properly uphold the trial court's decision declining the plaintiff's request to reform the mortgage deed to reference the fact that the mortgage [deed] executed by the defendant was given to secure a note executed by [Robert]?" And (2) "[i]f the answer to the

plaintiff filed a motion seeking to withdraw and amend the responses to the defendant's request for admissions, which the court ultimately denied. See id., 695–96.

JPMorgan Chase Bank, National Assn. *v.* Virgulak

first certified question is 'yes,' did the Appellate Court properly uphold the trial court's determination that the plaintiff was not entitled to foreclose the mortgage executed by the defendant because the defendant is not a borrower on the note?'' *JPMorgan Chase Bank, National Assn.* v. *Virgulak*, 333 Conn. 945, 219 A.3d 375 (2019). Additional facts will be set forth as necessary.

I

We first consider whether the Appellate Court properly affirmed the judgment of the trial court declining to grant reformation of the mortgage deed. The plaintiff asserts that the trial court improperly did not find that the parties intended for the mortgage deed signed by the defendant to secure the note signed by Robert. Therefore, the plaintiff contends, the mortgage deed should be reformed to reflect the parties' true agreement. The defendant counters that the trial court properly refused to reform the mortgage deed on the basis of the court's factual findings. We agree with the defendant.

"Reformation is appropriate only when the [contract] executed by the parties does not reflect the agreement the parties actually intended. . . . Reformation is not granted for the purpose of alleviating a hard or oppressive bargain, but rather to restate the intended terms of an agreement when the writing that memorializes that agreement is at variance with the intent of both parties . . . .'' (Internal quotation marks omitted.) *ARS Investors II 2012-1 HVB, LLC* v. *Crystal, LLC*, 324 Conn. 680, 692–93, 154 A.3d 518 (2017).

"A cause of action for reformation of a contract rests on the equitable theory that the instrument sought to be reformed does not conform to the real contract agreed [on] and does not express the intention of the parties and that it was executed as the result of mutual mistake, or mistake of one party coupled with actual

JPMorgan Chase Bank, National Assn. *v.* Virgulak

or constructive fraud, or inequitable conduct on the part of the other. . . . Equity evolved the doctrine because an action at law afforded no relief against an instrument secured by fraud or as a result of mutual mistake. . . . The remedy of reformation is appropriate in cases of mutual mistake—that is where, in reducing to writing an agreement made or transaction entered into as intended by the parties thereto, through mistake, common to both parties, the written instrument fails to express the real agreement or transaction. . . . In short, the mistake, being common to both parties, effects a result [that] neither intended.'' (Citations omitted; internal quotation marks omitted.) *Lopinto* v. *Haines*, 185 Conn. 527, 531–32, 441 A.2d 151 (1981). Additionally, ''[w]here fraud is absent, it must be established that both parties agreed to something different from what is expressed in writing, and the proof on this point should be clear so as to leave no room for doubt.'' (Emphasis omitted; internal quotation marks omitted.) Id., 535. There is no allegation of fraud in this case.

''We have stated the standard of proof for reformation in different ways but all with the same substantive thrust: evidence should be clear, substantial and convincing.'' (Internal quotation marks omitted.) Id., 534. ''This is the quality of the evidence required in cases of this type.'' Id., 535. ''The burden of proof on the issue of reformation is [on] the party seeking it.'' Id.

Here, the plaintiff had to establish the parties' clear agreement that the defendant's mortgage deed was intended to secure the note executed by Robert. As this court has recognized, ''the trier is the judge of credibility and, specifically . . . what the terms of the agreement were [is] a question of fact for the trier. . . . This court is limited to corrections of errors of law . . . .'' (Citations omitted; footnote omitted.) Id., 536. The question of whether, on the facts found, the court has held the

JPMorgan Chase Bank, National Assn. *v.* Virgulak

plaintiff, who had the burden of proof on the reformation issue, to the correct standard becomes one of law and is reviewable. See id.

In the present case, the plaintiff does not assert that the trial court improperly required it to prove the parties' agreement by clear and convincing evidence. Instead, on appeal, the plaintiff challenges the trial court's determination regarding the terms of the agreement between the parties, which is a factual determination subject to the clearly erroneous standard of review. See id.

The trial court noted that the parties stipulated to the following facts: "On or about December 11, 2006, Robert executed and delivered to [JPMorgan] Chase a note in the principal amount of $533,000 . . . . [The defendant] did not sign the note. The note was not timely paid, [it] went into default on or about February 1, 2010, and [JPMorgan Chase] elected to accelerate the balance due on the note. The present foreclosure action was commenced by [JPMorgan] Chase in February, 2013, at which time it held the note executed by Robert. . . .

"On January 24, 2011, Robert filed for protection under chapter 7 of the [United States] Bankruptcy Code, listing the note as an unsecured debt. The filing listed no real property owned by Robert. . . . [O]n April 26, 2011, Robert was granted an unconditional discharge from the bankruptcy court for his obligations under the note.

"[The defendant] signed [the mortgage deed] on December 11, 2006, which recited that it was given to secure a note dated December 11, 2006, signed by [the defendant] as the '[b]orrower,' in the amount of $533,000. The term '[b]orrower' is defined in the mortgage deed as 'Theresa Virgulak, married.' . . . [The defendant] has never signed a [guarantee] of Robert's obligations under the note." (Footnote omitted.)

341 Conn. 750      FEBRUARY, 2022      761

JPMorgan Chase Bank, National Assn. *v.* Virgulak

The trial court heard evidence from the parties over the course of a one day trial. The plaintiff introduced into evidence a copy of the note and mortgage deed. The trial court made the following findings.

The trial court found that the note was signed only by Robert, above a signature line labeled "Robert J. Virgulak," and that the note does not contain a signature line with the defendant's name. The trial court further found that "[t]he note . . . recites the obligations of the '[b]orrower' and does not otherwise define that term. However, page 3 of the note bears the signature of 'Robert J. Virgulak—[b]orrower.' The note does not bear [the defendant's] signature, nor does it indicate in any way that any person, other than Robert, is obligated under the terms of the note." (Citation omitted.)

The trial court explained that Rodriguez admitted that JPMorgan Chase's files did not include any originals or copies of any note signed by the defendant. Rodriguez did authenticate a United States Department of Housing and Urban Development Settlement Statement (HUD-1A form), a Transfer of Servicing Disclosure Statement, a Truth in Lending Statement, and a Notice of Right To Cancel, which were all signed by the defendant. None of these mortgage documents references the note executed by Robert.

The trial court also relied on the defendant's testimony.[5] At trial, the defendant testified that she had lived at the property for thirty-four years and had owned it for the last thirty years. The defendant further testified that she signed the mortgage deed at Robert's request. She admitted that she signed the HUD-1A form, the Transfer of Servicing Disclosure Statement, the Truth in Lending Statement, and the Notice of Right To Can-

[5] The trial court elucidated that "[it] has . . . consider[ed] all of the testimony given by Robert and [the defendant] to the extent that their credibility is at issue."

JPMorgan Chase Bank, National Assn. *v.* Virgulak

cel, but testified that she had not read the documents before signing them and that she signed them in Robert's presence only. The plaintiff presented no evidence to dispute this testimony.

The trial court explained that the defendant further testified that she had agreed that the proceeds of the subject note would be used to pay off a prior mortgage on the property but that she did not receive any portion of the $155,236.22 shown as paid to the "[b]orrower." The defendant explained that Robert managed the family's bills and paid all real estate taxes. The defendant further testified that she and Robert did not file joint tax returns or have credit cards in their names. The defendant also denied that she had signed any guarantees of Robert's debts.

The trial court also relied on Robert's testimony at trial.[6] He testified that, in his loan application, he included the value of the property, even though he knew that the property was solely in the defendant's name. Robert also testified that he had considered both he and the defendant jointly responsible for the prior mortgages on the property. Robert further testified that he had received the entire $155,236.22 in funds disbursed to the borrower at the closing. Robert explained that he used some of those funds to improve the kitchen and bathroom at the property. Robert testified that he paid the obligations under the note, real estate taxes and property insurance up until the time he filed for bankruptcy in 2010. Robert further testified that, since that time, he has not made any payments under the note or for real estate taxes but did reinstate the property insurance. According to Robert, the defendant has occupied the property since 2006 but has not made mortgage payments or paid property taxes.

[6] See footnote 5 of this opinion.

JPMorgan Chase Bank, National Assn. *v.* Virgulak

During cross-examination, Robert testified that the majority of the documents relating to the mortgage were given to him, not the defendant. He further testified that the defendant was not present at the closing held at the attorney's office. Robert explained that all communications regarding the mortgage were sent to him, not the defendant. Robert also explained that he used $109,070.48 of the proceeds of the note to pay off credit cards that were his exclusive responsibility and that approximately $35,000 of it was used to improve the kitchen and bathroom at the property. Robert also testified that JPMorgan Chase "required that the prior mortgages be paid off as a condition of granting the loan."

The trial court ultimately found: "The documents in evidence and the testimony of the witnesses leave many gaps in the factual record. It is not clear [whether] Robert spoke with any individual representing [JPMorgan] Chase prior to applying for the mortgage. There was no mortgage commitment listing the terms under which [JPMorgan] Chase was prepared to close the loan and what role, if any, [it] intended [the defendant] to play in the transaction. The [HUD-1A form] lists only one disbursement to a law firm—the $525 paid to Bove & Milici. Although Robert testified that the closing took place in John Milici's office, he did not testify as to whether Milici was representing him, [JPMorgan] Chase, or both. There was no testimony as to who prepared or reviewed the closing documents. Both Robert and [the defendant] testified that [the defendant] did not attend the closing and that she signed the mortgage deed and four related documents at the family home. However, there was no explanation of how the mortgage [deed] came to bear the signatures of two witnesses, one of whom, [Milici], also purported to take [the defendant's] acknowledgement.

"The records authenticated by . . . Rodriguez are silent as to any understanding [that JPMorgan] Chase

may have had with [the defendant] regarding her responsibility for the loan being made to Robert. Those records did not include a mortgage commitment letter or closing instructions, both of which typically would describe the transaction in detail and contain a checklist of documents required to be executed prior to disbursement of the proceeds of the loan.''

On the basis of the foregoing, the trial court concluded: ''The court finds that the plaintiff has not sustained its burden of proving, by clear and convincing evidence, that it is entitled to the equitable remedy of reformation of the mortgage deed . . . . Accordingly, the court finds the issues on the second count for [the defendant] and against the plaintiff.'' (Citation omitted.)

In a well reasoned opinion, the Appellate Court affirmed the judgment of the trial court, explaining that, ''[a]s the [trial] court correctly noted, even with the various documents admitted into evidence at trial and the testimony of the witnesses, many gaps were left in the factual record.'' *JPMorgan Chase Bank, National Assn.* v. *Virgulak*, supra, 192 Conn. App. 714. We agree. Principal among those gaps is that the mortgage deed identifies a ''[n]ote'' but does not explicitly identify the note signed by Robert. In other words, the plaintiff failed to produce clear and convincing evidence of the particular debt obligation that was being secured by the mortgage deed executed by the defendant. Indeed, in its posttrial brief, the plaintiff conceded that the parties never intended the mortgage deed to secure a note signed by the defendant.[7] There was no evidence produced or elicited by the plaintiff that required the trial court to find that the defendant intended the mortgage as security for Robert's loan.

_____
[7] In its response to the defendant's request for admissions, Hudson also conceded that the defendant never borrowed any money from Hudson or JPMorgan Chase. See footnote 4 of this opinion.

JPMorgan Chase Bank, National Assn. *v.* Virgulak

On appeal to this court, the plaintiff does not assert that any of the trial court's findings of fact are clearly erroneous or that the trial court incorrectly required that mutual mistake be shown by clear and convincing evidence. Instead, we understand the plaintiff's claim on appeal to be that the Appellate Court improperly affirmed the judgment of the trial court because the trial court failed to find, but should have found, that the parties—and the defendant in particular—intended the mortgage deed to secure Robert's note.

It is well established that "[a] contract is to be construed according to what may be assumed to have been the understanding and intention of the parties. . . . The intention of the parties is a question of fact to be determined from the language of the contract, the circumstances attending its negotiation, and the conduct of the parties in relation thereto. . . . The trial court's finding of fact with respect to intent is reversible on appeal only if the court's finding was clearly erroneous." (Citations omitted; internal quotation marks omitted.) *Voll* v. *Lafayette Bank & Trust Co.*, 223 Conn. 419, 426, 613 A.2d 266 (1992). We cannot conclude that the absence of a finding by the trial court that the parties intended the mortgage deed signed by the defendant to secure Robert's note was clearly erroneous.

In the present case, the language of the contract does not support the plaintiff's claim that the defendant's mortgage deed was intended to secure the note executed by Robert. Indeed, the language of the mortgage deed does not mention Robert or any note executed by him.

The circumstances attending the negotiation of the mortgage also do not necessarily support the plaintiff's claim that the parties intended the defendant's mortgage deed to secure Robert's note. There is no evidence that the plaintiff or its predecessors in interest ever

spoke with the defendant prior to her execution of the mortgage deed, or required her to secure the note as a condition of Robert's receiving the funds. The trial court also pointed to the undisputed fact that the defendant did not attend the closing and to the lack of evidence as to whether JPMorgan Chase, or its representative, was present.

Furthermore, the conduct of the parties in relation to the mortgage deed and the note also does not necessarily support the plaintiff's claim that the defendant and JPMorgan Chase intended the defendant's signature on the mortgage deed to secure the note signed by Robert. The trial court found that Robert received all of the net loan proceeds from the note and used most of those funds to pay off credit cards that were his exclusive responsibility. The plaintiff failed to introduce any evidence of communications with the defendant regarding the note and mortgage deed.

The trial court was not persuaded that the parties to the mortgage deed intended it to secure the note signed by Robert. As we have explained, this is a factual finding left to the trial court that can be overturned only if it is clearly erroneous. On the basis of the evidence in the present case, we cannot conclude that the Appellate Court improperly affirmed the judgment of the trial court.

On appeal to this court, the plaintiff does not challenge the absence of a finding by the trial court that the parties intended the mortgage deed signed by the defendant to secure Robert's note as clearly erroneous or assert that the trial court applied the wrong standard in making its factual finding. Instead, the plaintiff asserts that, because the defendant signed a mortgage deed that referenced a note with the same date and in the same amount as the note that Robert signed, the trial court incorrectly determined that the plaintiff did

JPMorgan Chase Bank, National Assn. *v.* Virgulak

not meet its high burden of showing that the defendant intended the mortgage deed to secure the note executed by Robert. The plaintiff essentially asserts that common sense dictates that the defendant intended to sign the mortgage deed to secure a note and that there is no other reason to sign a mortgage deed. From there, the plaintiff argues that the note Robert executed on the same day that the defendant signed the mortgage deed must be the note the defendant agreed to secure.

The question before this court, however, is not whether a fact finder could reasonably have concluded that the defendant intended the mortgage deed to secure a note signed by Robert but, rather, whether the trial court's conclusion that it could not make such a finding was clearly erroneous. We conclude that it was not because, as the trial court correctly noted, the evidence presented on that specific question fell short of the very high burden required to demonstrate mutual mistake. Indeed, Hudson, the plaintiff's predecessor in interest, admitted that the defendant did not borrow any money from Hudson or JPMorgan Chase, and the plaintiff conceded that the mortgage deed was not intended to secure any note signed by the defendant. Further, the plaintiff failed to present any testimony regarding whether JPMorgan Chase itself intended the defendant's signature on the mortgage deed to secure the note signed by Robert. Because of this lack of evidence, we cannot conclude that the trial court's inability to find that the parties intended the mortgage deed signed by the defendant to secure Robert's note was clearly erroneous.

This court repeatedly has warned that the power of courts to reform written instruments is one that should be exercised cautiously. See, e.g., *Lopinto* v. *Haines*, supra, 185 Conn. 539 ("[t]his standard of proof should operate as a weighty caution upon the minds of all judges, and it forbids relief whenever the evidence is

loose, equivocal or contradictory'' (internal quotation marks omitted)); see also, e.g., *Philippine Sugar Estates Development Co.*, *Ltd.* v. *Philippine Islands*, 247 U.S. 385, 391, 38 S. Ct. 513, 62 L. Ed. 1177 (1918) (stating that reformation will not be granted "unless the proof of mutual mistake [is] of the clearest and most satisfactory character" (internal quotation marks omitted)); cf. 1 Restatement (Second), Contracts § 155, comment (c), p. 410 (1981) ("[b]ecause experience teaches that mistakes are the exception and not the rule . . . [c]are is all the more necessary when the asserted mistake relates to a writing, because the law of contracts . . . attaches great weight to the written expression of an agreement").

In the present case, it is undisputed that Robert received an unconditional discharge of his obligations under the note through the bankruptcy proceeding in 2011. The defendant was not obligated under the terms of that note, and the plaintiff is not seeking reformation of that note. Moreover, the parties stipulated, and the trial court specifically found, that the defendant was not a guarantor of the note executed by Robert. Instead, the plaintiff is effectively attempting to make the defendant a surety responsible for Robert's debt in the event of default. See, e.g., *Bernd* v. *Lynes*, 71 Conn. 733, 736, 43 A. 189 (1899) ("the contract of a surety is a collateral engagement for another, as distinguished from an original and direct agreement for the party's own act" (internal quotation marks omitted)). We cannot conclude that the trial court's refusal to use its equitable power to reform the mortgage deed was improper under these circumstances.

To be sure, identifying the obligation secured by a mortgage deed is not a technical or scrivener's error. Reforming the mortgage deed in the manner sought by the plaintiff without establishing that the change effects the original intention of the parties changes the defen-

JPMorgan Chase Bank, National Assn. *v.* Virgulak

dant's obligations and creates a new contract between her and the plaintiff. This court has cautioned that "[a]n obstacle to reformation [that] we find insurmountable arises from the fundamental principle that there can be no reformation unless there is an antecedent agreement upon which the minds of the parties have met. The relief afforded in reforming an instrument is to make it conform to the previous agreement of the parties." *Hoffman* v. *Fidelity & Casualty Co. of New York*, 125 Conn. 440, 443, 6 A.2d 357 (1939). Consequently, "a definite agreement on which the minds of the parties have met must have [preexisted] the instrument in question." Id. It is axiomatic that a "court cannot supply an agreement [that] was never made, for it is [a court's] province to enforce contracts, not to make or alter them." Id. The issue here is whether it was clearly erroneous for the trial court not to find that a prior agreement existed between JPMorgan Chase and the defendant that the defendant would execute the mortgage deed in order to secure Robert's debt.

We recognize that the fact the mortgage deed and note have matching dates and refer to matching amounts could have allowed the trial court to infer that the transactions are related. However, based on the other evidence presented, which suggests that the defendant did not intend to secure Robert's debt, and the absence of any direct evidence that either party did intend the mortgage deed to secure a note executed by Robert, we cannot conclude that the absence of a finding by the trial court that JPMorgan Chase and the defendant intended for the defendant to execute the mortgage deed in order to secure Robert's note was clearly erroneous.

In its brief, the plaintiff posits the rhetorical question, what other reason would the defendant have to sign the mortgage deed if not to secure Robert's note? This question and the speculative answer it may yield, how-

JPMorgan Chase Bank, National Assn. *v.* Virgulak

ever, do not provide anything like dispositive evidence of the parties' respective intentions here. The defendant had no burden to demonstrate what other purpose or intent motivated her to sign the mortgage deed. It is the plaintiff, as the party seeking reformation, that must prove the preexisting agreement that it seeks to effectuate, and it must do so by clear and convincing evidence. It did not do so to the satisfaction of the trial court, and we cannot conclude that the trial court's findings in this regard were clearly erroneous.

We cannot conclude, on the basis of the evidence before the trial court, that the absence of a finding by the court that the parties intended the mortgage deed signed by the defendant to secure the note signed by Robert was clearly erroneous. Thus, we conclude that the Appellate Court properly upheld the trial court's decision to decline to reform the mortgage deed.

II

We next consider whether the Appellate Court properly affirmed the judgment of the trial court determining that the plaintiff was not entitled to foreclose the mortgage executed by the defendant because the defendant is not a borrower on the note. On appeal, the plaintiff contends that, even if this court concludes that the Appellate Court properly upheld the trial court's denial of the request for reformation, the plaintiff is nevertheless entitled to foreclose. The plaintiff argues that this is so because it is undisputed that the defendant entered into a mortgage transaction and common sense dictates that she intended her property interest to be security for the note contemporaneously executed by Robert. The plaintiff contends that, therefore, foreclosure is the proper equitable relief. The defendant counters that the plaintiff cannot foreclose the mortgage without reformation. We agree with the defendant.

JPMorgan Chase Bank, National Assn. *v.* Virgulak

As we noted previously, "[a] foreclosure action is an equitable proceeding. . . . The determination of what equity requires is a matter for the discretion of the trial court." (Internal quotation marks omitted.) *Deutsche Bank National Trust Co.* v. *Angle*, 284 Conn. 322, 326, 933 A.2d 1143 (2007). Thus, on appeal, we employ the abuse of discretion standard. See, e.g., id.

"In order to establish a prima facie case in a mortgage foreclosure action, the plaintiff must prove by a preponderance of the evidence that it is the owner of the note and mortgage, that the defendant mortgagor has defaulted on the note and that any conditions precedent to foreclosure, as established by the note and mortgage, have been satisfied." GMAC *Mortgage, LLC* v. *Ford*, 144 Conn. App. 165, 176, 73 A.3d 742 (2013), citing *Franklin Credit Management Corp.* v. *Nicholas*, 73 Conn. App. 830, 838, 812 A.2d 51 (2002), cert. denied, 262 Conn. 937, 815 A.2d 136 (2003).

In the present case, it is undisputed that the defendant did not sign the promissory note. Instead, the defendant signed only the mortgage deed, and the mortgage deed does not indicate that it was entered into to secure the note executed by Robert. The mortgage deed mentions only a nonexistent promissory note for which the defendant alone is the borrower. Hudson, the plaintiff's predecessor in interest, conceded that the defendant was not a borrower on any note.

We find the Appellate Court's reasoning persuasive in resolving this claim. The Appellate Court reasoned: "In reviewing the [trial] court's memorandum of decision and subsequent rulings on the plaintiff's motions, it is clear that it declined to grant foreclosure of the mortgage without reformation because it determined that the mortgage [deed], as executed, was a nullity because it secured a nonexistent debt." *JPMorgan Chase Bank, National Assn.* v. *Virgulak*, supra, 192 Conn.

App. 703. Accordingly, like the Appellate Court majority, we cannot conclude that the plaintiff was entitled to foreclose a mortgage for a debt for which the defendant was not responsible and that was not referenced in the mortgage deed.

On the basis of the foregoing, we conclude that the Appellate Court correctly concluded that the trial court did not abuse its discretion and properly affirmed the judgment of the trial court.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

———————————————