******************************************

The "officially released" date that appears near the
beginning of an opinion is the date the opinion will be
published in the Connecticut Law Journal or the date it
is released as a slip opinion. The operative date for the
beginning of all time periods for the filing of postopin-
ion motions and petitions for certification is the "offi-
cially released" date appearing in the opinion.

All opinions are subject to modification and technical
correction prior to official publication in the Connecti-
cut Law Journal and subsequently in the Connecticut
Reports or Connecticut Appellate Reports. In the event
of discrepancies between the advance release version of
an opinion and the version appearing in the Connecti-
cut Law Journal and subsequently in the Connecticut
Reports or Connecticut Appellate Reports, the latest
version is to be considered authoritative.

The syllabus and procedural history accompanying
an opinion that appear in the Connecticut Law Jour-
nal and subsequently in the Connecticut Reports or
Connecticut Appellate Reports are copyrighted by the
Secretary of the State, State of Connecticut, and may
not be reproduced or distributed without the express
written permission of the Commission on Official Legal
Publications, Judicial Branch, State of Connecticut.

******************************************

# WELLS FARGO BANK, N.A., TRUSTEE *v.*
# PAUL C. BISSONNETTE ET AL.
## (AC 46628)

Seeley, Westbrook and Prescott, Js.

*Syllabus*

The defendant property owner appealed from the trial court's judgment of strict foreclosure rendered in the plaintiff's fourth foreclosure action brought against the defendant. The defendant claimed, inter alia, that the court improperly rendered a judgment of strict foreclosure because a 2010 loan modification agreement between the plaintiff and the defendant was not signed by the plaintiff's agent and, thus, was invalid and unenforceable. *Held*:

The defendant's claim that the trial court improperly rendered a judgment of strict foreclosure because the 2010 loan modification agreement was never signed by the plaintiff's agent as required under the terms of the original mortgage deed and was therefore invalid and unenforceable failed because, even if the loan modification was deemed invalid, the plaintiff nevertheless would have been entitled to a judgment of foreclosure because the plaintiff produced evidence that the defendant was in default under the terms of the original note and mortgage.

The trial court properly determined that a judgment of strict foreclosure was not precluded under the doctrines of res judicata or collateral estoppel because the record did not support a finding that any material issue or claim raised and decided on the merits in the third foreclosure action had also been raised and adjudicated in the present action, which was brought following the issuance of a new notice of default.

There was adequate evidence presented to support the trial court's finding that the defendant was in default on the note and mortgage as modified by the 2010 loan modification agreement.

This court declined to review the defendant's inadequately briefed claim that the plaintiff had failed to provide him with proper notice of default.

Argued October 7, 2024—officially released May 6, 2025

*Procedural History*

Action to foreclose a mortgage on certain real property, and for other relief, brought to the Superior Court in the judicial district of Waterbury, where the defendant HSBC Mortgage Services, Inc., was defaulted for failure to appear; thereafter, the case was tried to the

court, *Cordani, J.*; judgment of strict foreclosure, from which the named defendant appealed to this court. *Affirmed.*

*Paul C. Bissonnette*, self-represented, the appellant, with whom, on the brief, was *Gary L. Seymour* (named defendant).

*Jordan W. Schur*, for the appellee (plaintiff).

*Opinion*

WESTBROOK, J. Before us is the fourth mortgage foreclosure action brought against the defendant Paul C. Bissonnette[1] by the plaintiff, Wells Fargo Bank, National Association, as Trustee for Asset Backed Securities Corporation Home Equity Loan Trust, Series OOMC 2005-HE6, Asset Backed Pass-Through Certificates, Series OOMC 2005-HE6.[2] In the present action, the trial court rendered a judgment of strict foreclosure, from which the defendant now appeals. The defendant claims that the court improperly rendered the judgment of strict foreclosure because (1) a 2010 loan modification agreement between the plaintiff and the defendant, the default of which in part forms the basis of the present action, was not signed by the plaintiff's agent and, thus, is unenforceable; (2) the defendant should have prevailed on his special defense of res judicata and/or issue preclusion based upon the third foreclosure action, which was resolved in favor of the defendant; and (3) the plaintiff failed to establish that the

_____

[1] The complaint named HSBC Mortgage Services, Inc., as an additional defendant. HSBC Mortgage Services, Inc., failed to appear before the trial court or to participate in the present appeal. Accordingly, all references to the defendant are to Paul C. Bissonnette only.

[2] See *Wells Fargo Bank, N.A.* v. *Bissonnette*, Superior Court, judicial district of Waterbury, Docket No. CV-07-5004508-S; *Wells Fargo Bank, N.A.* v. *Bissonnette*, Superior Court, judicial district of Waterbury, Docket No. CV-11-6010612-S; *Wells Fargo Bank, N.A.* v. *Bissonnette*, Superior Court, judicial district of Waterbury, Docket No. CV-14-6024874-S.

defendant breached the 2010 loan modification agreement or that it issued the defendant a proper notice of default. We disagree with the defendant's claims. Accordingly, we affirm the judgment of the court and remand the case for the setting of new law days.

The following facts, which either were found by the court or are undisputed in the record,[3] and procedural history are relevant to our review. In May, 2005, the defendant executed a promissory note in favor of the plaintiff's predecessor in interest, Opteum Financial Services, LLC (Opteum), in the principal amount of $229,500. As security for the note, the defendant executed a mortgage in favor of Opteum on the defendant's property located at 152 Summit Road in Prospect. The mortgage later was assigned to the plaintiff.[4]

In 2007, the plaintiff commenced the first of three prior foreclosure actions against the defendant. See footnote 2 of this opinion. It is unclear from the available record the precise disposition of the first foreclosure action.[5] Nonetheless, in 2009, the defendant

---

[3] It is axiomatic that, in addition to considering the record in the present action, this court may take judicial notice of the files in the parties' previous foreclosure actions. See, e.g., *Castro* v. *Mortgage Lenders Network USA, Inc.*, 158 Conn. App. 371, 373 n.3, 119 A.3d 639 (2015).

[4] Opteum assigned the mortgage to Option One Mortgage Corporation, which, in turn, assigned the mortgage to the plaintiff. The court found that, prior to initiating the present action, the plaintiff also had obtained possession of the note, which was endorsed in blank.

[5] In its decision resolving the plaintiff's third foreclosure action, the court, *M. Taylor, J.*, made the following observations in a footnote with respect to the first foreclosure action: "After a default judgment of strict foreclosure was [rendered] on June 19, 2007, th[e] action was stayed in state court by the defendant's bankruptcy in federal court. Judgment was subsequently reentered after bankruptcy on May 12, 2008, with the first law day set for June 10, 2008. . . . [*The*] *first foreclosure was not opened or withdrawn . . . .*" (Emphasis added.) *Wells Fargo Bank* v. *Bissonnette*, Docket No. CV-14-6024874-S, 2018 WL 3827060, *1 n.3 (Conn. Super. July 20, 2018). The record is silent regarding why the plaintiff did not act to enforce that prior judgment rather than pursuing subsequent actions against the defendant; however, neither party has argued that the earlier judgment should be considered in resolving the present appeal.

entered into the first of several loan modification agreements with the plaintiff (2009 modification).[6] By August, 2010, however, the defendant was again in default on his monthly mortgage payment obligation and, at that time, entered into a second loan modification agreement with the plaintiff (2010 modification). Pursuant to explicit provisions of both loan modification agreements, all terms of the original note and mortgage remained in effect unless expressly modified by the loan modification agreement.

Beginning in December, 2010, the defendant again stopped making required monthly mortgage payments, and, in 2011, the plaintiff filed its second foreclosure action. The plaintiff withdrew this second foreclosure action on June 5, 2012, after the parties reached a settlement, having purportedly entered into a third loan modification agreement (2012 modification).

In August, 2014, the plaintiff filed its third foreclosure action. The plaintiff alleged in the operative amended complaint that the defendant was in default on the note, the mortgage, and the 2012 modification and that the plaintiff "has elected to accelerate the balance due on said note, mortgage and 2012 modification, to declare said note, mortgage and 2012 modification to be due in full and to foreclose the mortgage and 2012 modification."[7] The defendant raised a number of special defenses, including that the 2012 modification was not signed by the plaintiff but unilaterally by the defendant, and the parties disagreed as to whether a unilaterally signed modification is legally sufficient.

---

[6] Each loan modification agreement effectively cured any existing default by recapitalizing the defendant's outstanding delinquent payments and adjusting future payment terms.

[7] The original complaint in the third foreclosure action was amended to include additional facts, including the execution of the 2009 modification. The plaintiff argued that the amendments were needed to "provide a more complete recitation of the facts of this case." There was no mention of the 2010 modification in the amended complaint.

On July 20, 2018, in the third foreclosure action, the court, *M. Taylor, J.*, issued a memorandum of decision in which it found that, although the defendant had signed the 2012 modification, he had conditioned his acceptance of the agreement by contemporaneously delivering to the plaintiff a signed counteroffer to which the plaintiff never responded. Accordingly, the court concluded that "no valid modification was entered into by the parties in 2012, as alleged, upon which the defendant could be found in default. Therefore, the foreclosure is denied."[8]

In March, 2019, the plaintiff commenced this fourth foreclosure action against the defendant. The complaint alleged that the original 2005 note and mortgage had been modified by loan modification agreements in 2009 and 2010 and that the "note and mortgage are now in default by virtue of nonpayment of the monthly installments of principal and interest due on December 1, 2010, and each and every month thereafter . . . ." The complaint did not contain any allegations regarding the 2012 modification, which the prior court had found to be invalid, but instead relied on allegations that the defendant was in default on the original note and mortgage as modified in 2009 and 2010. The plaintiff filed a motion seeking a judgment of strict foreclosure.

The defendant filed an answer and special defenses in which he admitted ownership of the property and the validity of the original note and mortgage but denied or left the plaintiff to its proof on all other allegations.

[8] In reaching this conclusion, the court also stated that, "[a]lthough the 2009 modification was [pleaded] in the amended complaint, there is no allegation or evidence presented of a default on the [2009 modification]. Without a default of the operative mortgage agreement, the court concludes [that] there is no prerequisite proven to proceed to foreclosure under the facts and pleadings of this case." The plaintiff did not file an appeal challenging the judgment of the court, and the propriety of the July 20, 2018 decision, therefore, is not before us in the present appeal.

By way of special defense, he asserted res judicata based on the failed third foreclosure action; issue preclusion based on the plaintiff's failure to have sought enforcement of the 2010 modification in the third foreclosure action, which the plaintiff now relied upon in support of the present action; and that the plaintiff had not properly executed either the 2009 modification or the 2010 modification, rendering them invalid and unenforceable. The court, *Agati*, *J.*, denied both parties' motions for summary judgment, concluding that there were issues of fact and credibility that needed to be resolved by a trier of fact.

The court, *Cordani*, *J.*, conducted a trial on April 26, 2023. On June 5, 2023, it issued a memorandum of decision rendering a judgment of strict foreclosure in favor of the plaintiff. The court found on the basis of the evidence produced at trial that the plaintiff was the owner and holder of the note and associated mortgage; the defendant breached the terms of the note and mortgage "in both the original form and the [modified] form"; the plaintiff satisfied all conditions precedent to bringing the present action; and the defendant failed to prove any of his special defenses.[9]

With respect to the defendant's special defenses, the court rejected the defendant's assertion that either res judicata or issue preclusion arising from the failed third foreclosure action are applicable. As explained by the court, "[t]he claim, and only issue decided, in the [third foreclosure action] was whether the defendant breached, at that time, [the 2012 modification]. Accordingly, the claim made in this matter, and the claim made and decided in the [third foreclosure action], are different and distinct." The court noted that the defendant failed

---

[9] The court noted that the defendant did not testify at trial and did not present any case of his own other than to enter exhibits by stipulation of the parties.

to direct the court to any "specific issue that was decided in the [third foreclosure action] that is material to a decision in this action, and the court has found no such issue." The court further explained that "[t]he fact that a representative of the plaintiff's predecessor may have testified in the [third foreclosure action] in a manner that is inconsistent with the claims here may be evidence in this matter but does not itself give rise to res judicata or issue preclusion. No issue or claim decided in the [third foreclosure action] is presented in this matter or necessary to a decision in this matter. The court notes that the defendant in this matter has admitted entering into the note and mortgage as originally constituted in 2005. The claim and issue presented in this matter is whether or not the defendant breached the note and mortgage as modified by amendments alleged to have been made in 2009 and 2010. The foregoing issue and claim was not presented . . . or decided [in the third foreclosure action]." (Footnotes omitted.)

With respect to the defendant's third special defense, in which the defendant asserted that the 2009 modification and the 2010 modification were invalid and unenforceable because they were not signed by both parties, the court found "that the 2009 and 2010 loan modification agreements are enforceable agreements. [Although] it is true that the plaintiff's agent did not sign these modification agreements on the signature page, each agreement was offered by the plaintiff and accepted by the defendant when the defendant signed each of them. Further, the plaintiff, upon receiving the defendant's signature on both of these loan modification agreements, implemented them in accordance with their terms by adjusting the plaintiff's accounting and financial expectations accordingly." (Footnotes omitted.) The court maintained that, even if it accepted for argument's sake that the 2009 modification and the 2010 modification were not enforceable as the defendant

argued, "the defendant still defaulted on the [original] note and mortgage. If the 2009 and 2010 loan modification agreements did not come into being and are not enforceable, the note and mortgage exist today and are enforceable in accordance with their original terms. The note in its original, unamended form required monthly payments on the first of each month into 2035. The plaintiff admitted entering into the [original] note and mortgage. The evidence establishes that the defendant has made no payments on the note since November 22, 2010. Accordingly, even under the [defendant's] alleged facts, he has defaulted. The defendant's arguments are mistaken in his attempted focus on whether he defaulted on the [2010 modification], which he contended was unenforceable. . . . [O]ne does not breach a loan modification agreement, but instead breaches the original note and mortgage as modified by the loan modification agreement. Accordingly, if the modification does not exist, then the focus shifts to an analysis of the defendant's actions in relation to the conceded original note and mortgage. In this matter, filed in 2019, the defendant has made no payments since 2010 and accordingly has breached the terms of the note and mortgage in both the original form and the amended form."[10]

The court found that the total amount of the debt owed by the defendant under the terms of the note was $581,843.57 and that the fair market value of the property, as stipulated by the parties, was $288,000.

---

[10] The court, "[i]n considering the equity of the matter," further stated as follows: "This is the fourth litigation over the note and mortgage. The court finds that equity weighs heavily in favor of the plaintiff. The court notes that the defendant received his loan and admittedly entered into the note and mortgage in 2005, then repeatedly defaulted between 2007 and 2010, and made his last payment of any kind on the note in 2010. The fact that this matter has remained unresolved for this extended period of time only reinforces the need for prompt justice at this point."

Given the lack of equity in the property, the court rendered a judgment of strict foreclosure in favor of the plaintiff and set law days to commence on July 31, 2023. This appeal followed. Additional facts will be set forth as necessary.

We begin with guiding legal principles, including the applicable standard of review. A court properly may find a defendant liable in a foreclosure action if the evidence establishes an undisputed prima facie case and the defendant fails to assert any legally sufficient special defense. See *GMAC Mortgage, LLC* v. *Ford*, 144 Conn. App. 165, 176, 73 A.3d 742 (2013). "[T]o establish a prima facie case in a mortgage foreclosure action, the plaintiff must prove by a preponderance of the evidence that it is the owner of the note and mortgage, that the defendant mortgagor has defaulted on the note and that any conditions precedent to foreclosure, as established by the note and mortgage, have been satisfied." Id. "An action to foreclose on a mortgage is an equitable proceeding, and the trial court enjoys broad discretion in considering whether to grant a mortgagee the remedy of foreclosure for the default of a mortgage loan. . . . We thus ordinarily review a trial court's decision to grant foreclosure for an abuse of discretion. . . . [If], however, the claims on appeal are not targeted at the trial court's exercise of discretion, but at a subsidiary legal conclusion, our review is plenary." (Citations omitted.) *ARS Investors II 2012-1 HVB, LLC* v. *Crystal, LLC*, 324 Conn. 680, 685, 154 A.3d 518 (2017). Likewise, to the extent that our review requires us to construe the note and mortgage, or a subsequent loan modification agreement, such review also is plenary. See *Jancewicz* v. *1721, LLC*, 134 Conn. App. 394, 397–98, 39 A.3d 782, cert. denied, 305 Conn. 907, 44 A.3d 183 (2012). With these principles in mind, we turn to the defendant's claims.

## I

The defendant first claims that the court improperly rendered the judgment of strict foreclosure because the 2010 modification, on which the foreclosure action was in part based, was never signed by the plaintiff's agent as required under the terms of the original mortgage deed and, accordingly, was invalid and unenforceable. We reject the defendant's claim.

The following additional facts are relevant to our discussion of this claim. During the foreclosure trial, the plaintiff presented testimony from Kawanna McDowell, who was a senior loan analyst for the plaintiff's loan servicing company and who had reviewed and was familiar with the business records relevant to the loan at issue, which included the original note and mortgage and the subsequent loan modification agreements. McDowell testified that the 2010 modification was sent to the defendant, who signed and returned it. The terms of the 2010 modification were then implemented by the loan servicer, as evidenced by the monthly mortgage statements beginning in October, 2010, which reflected the new payment terms. The defendant made payments pursuant to the terms of the 2010 modification for the months of October and November, 2010. He subsequently stopped making payments on his obligation under the note and mortgage beginning in December, 2010.

Turning to the defendant's claim, it is undisputed that the original mortgage deed provides in relevant part that "[t]his Security Instrument may be modified or amended only *by an agreement in writing signed by Borrower and Lender.*" (Emphasis added.) It is further undisputed that, although both the 2009 modification and the 2010 modification were signed by the defendant as the borrower, neither one was signed by the loan servicer as the agent for the plaintiff. Although both

loan modification agreements contained a signature line for the loan servicer, McDowell testified at trial that it was the usual practice of the loan servicer simply to accept and act on a loan modification once the agreement had been signed by the borrower.

Generally, "parties may become bound by the terms of a contract, even though they do not sign it, where their assent or a meeting of the minds is otherwise indicated, such as by accepting and acting upon the contract, or by ratifying the contract, or by the acceptance by one of the performance by the other." (Footnotes omitted.) 17A Am. Jur. 2d 184, Contracts § 172 (2023); see also *Schwarzschild* v. *Martin*, 191 Conn. 316, 321–22, 464 A.2d 774 (1983) ("parties may become bound by the terms of a contract, even though they do not sign it, where their assent is otherwise indicated, such as by the acceptance of benefits under the contract" (internal quotation marks omitted)); *Original Grasso Construction Co.* v. *Shepherd*, 70 Conn. App. 404, 411, 799 A.2d 1083 ("[p]arties are bound to the terms of a contract even though it is not signed if their assent is otherwise indicated" (internal quotation marks omitted)), cert. denied, 261 Conn. 932, 806 A.2d 1065 (2002). Nevertheless, parties may make the signing of a contract a condition precedent to its enforcement, meaning that, in the absence of a signature, the contract will be deemed unenforceable. See 17A Am. Jur. 2d, supra, § 174, p. 186.

In the present case, it is unnecessary for us to resolve whether the defendant's unilateral execution and acceptance of the loan modification agreements and subsequent performance and/or acceptance of the benefits of those agreements qualified as a waiver or equitable estoppel with respect to the signature requirement in the original mortgage deed. Although the trial court determined that the 2009 modification and the 2010

modification were enforceable, it also alternatively concluded that, even if they were not, the defendant would remain bound by the terms of the original note and mortgage, which required monthly payments on his loan. The undisputed evidence presented at trial showed that he had stopped making any payments beginning in December, 2010, and, thus, that he was in default on the original note and mortgage.

In his principal appellate brief, the defendant does not address the aspect of the court's ruling concerning the original note and mortgage or provide any legal analysis as to why, if we agreed with him that the 2009 modification and the 2010 modification were unenforceable, he could not be found in default under the terms of the original note and mortgage. We recognize that the court's conclusion that the defendant was in default of the 2009 modification and the 2010 modification, which were enforceable, or, in the alternative, that the defendant was in default of the original loan agreement, creates a significant question regarding the proper calculation of the amount of the debt owed by the defendant. An accurate calculation of the total debt owed depends, in large part, on whether the applicable terms of the loan are those contained in the original note or in a subsequent modification of the original terms because those agreements contain different interest rates and other material terms. Importantly, however, the defendant has not challenged the court's judgment with respect to its calculation of the amount of the debt, and, therefore, this issue is not properly before us, and we do not consider it in resolving the defendant's claim.

In sum, we agree with the court that, even if the loan modifications are deemed invalid, the plaintiff nevertheless would have been entitled to a judgment of foreclosure because the plaintiff produced evidence that the defendant was in default under the terms of the original

note and mortgage. Accordingly, the defendant's first claim fails.

II

The defendant, relying on the third foreclosure action that was resolved in his favor, next claims that the doctrines of res judicata and/or issue preclusion barred the court from rendering a judgment of strict foreclosure in the present action. We reject this claim for the same reasons provided by the trial court.

"Claim preclusion (res judicata) and issue preclusion (collateral estoppel) have been described as related ideas on a continuum. [C]laim preclusion prevents a litigant from reasserting a claim that has already been decided on the merits. . . . [I]ssue preclusion . . . prevents a party from relitigating an issue that has been determined in a prior suit. . . . The doctrines of res judicata and collateral estoppel protect the finality of judicial determinations, conserve the time of the court, and prevent wasteful relitigation." (Internal quotation marks omitted.) *Wells Fargo Bank, National Assn.* v. *Doreus*, 218 Conn. App. 77, 83, 290 A.3d 921, cert. denied, 347 Conn. 904, 297 A.3d 198 (2023).

"In order for res judicata to apply, four elements must be met: (1) the [prior] judgment must have been rendered on the merits by a court of competent jurisdiction; (2) the parties to the prior and subsequent actions must be the same or in privity; (3) there must have been an adequate opportunity [in the prior action] to litigate the [omitted claim] fully; and (4) the same underlying claim must be at issue." (Internal quotation marks omitted.) *Solon* v. *Slater*, 345 Conn. 794, 825, 287 A.3d 574 (2023). "Unlike the doctrine of res judicata . . . the doctrine of collateral estoppel does not depend on the plaintiff's ability to assert an identical claim in the prior proceeding—it depends, instead, on the actual resolution of an identical issue in the prior proceeding

following a full and fair opportunity for litigation." (Citation omitted; emphasis omitted.) Id., 823–24.

"The doctrine of res judicata should be applied as necessary to promote its underlying purposes. These purposes are generally identified as being (1) to promote judicial economy by minimizing repetitive litigation; (2) to prevent inconsistent judgments which undermine the integrity of the judicial system; and (3) to provide repose by preventing a person from being harassed by vexatious litigation. . . . But by the same token, the internal needs of the judicial system do not outweigh its essential function in providing litigants a legal forum to redress their grievances." (Citations omitted; internal quotation marks omitted.) *Rosenfield* v. *Cymbala*, 43 Conn. App. 83, 87–88, 681 A.2d 999 (1996). Whether the doctrines of res judicata and collateral estoppel apply to the facts of this case presents a question of law over which our review is plenary. See *Solon* v. *Slater*, supra, 345 Conn. 809.

Turning to the defendant's claim, we are not persuaded that res judicata bars the judgment in the present action because the third foreclosure action relied on by the defendant in support of this claim was not resolved on the merits of whether the defendant was in default on his original loan obligations but, rather, solely on the issue of the enforceability of the 2012 modification. The complaint in the present action alleges that the defendant breached the original note and mortgage as modified by amendments in 2009 and 2010. In the third foreclosure action, the court did not consider or address the merits of whether the defendant had defaulted or breached the terms of the original note and mortgage. Rather, the only issue that the court decided, and which it found fully dispositive of the matter before it, was whether the defendant had entered into the 2012 modification.

Moreover, the present action to foreclose was not brought on the basis of the same notice of default underlying the third foreclosure action. The defendant continued to default on his mortgage obligations after the third foreclosure action was resolved and, therefore, the present action was brought on the basis of the defendant's continued and subsequent default of his mortgage obligations. Foreclosure is an equitable remedy and, accordingly, some tension exists between a court's duty to weigh the equities involved and its application of res judicata, a legal doctrine. We find persuasive the statement of the Supreme Court of Florida that the "ends of justice require that the doctrine of res judicata not be applied so strictly so as to prevent mortgagees from being able to challenge multiple defaults on a mortgage." *Singleton* v. *Greymar Associates*, 882 So. 2d 1004, 1008 (Fla. 2004); see id. ("[w]e can find no valid basis for barring mortgagees from challenging subsequent defaults on a mortgage and note solely because they did not prevail in a previous attempted foreclosure based upon a separate alleged default"); see also *Cenlar FSB* v. *Malenfant*, 203 Vt. 23, 43, 151 A.3d 778 (2016) (holding that new notice of default was required before lender could pursue second foreclosure action on note).

Likewise, we reject that aspect of the defendant's claim arguing that the judgment should be barred by collateral estoppel. The primary contention raised by the defendant in support of this claim is that, during the trial of the third foreclosure action, the loan servicing agent through whom the plaintiff's documentary evidence was presented never testified regarding the existence of the 2010 modification, which stands in conflict with the testimony and documentary evidence provided by McDowell in the present action. As the trial court explained, however, the fact that a witness in a prior action testifies in a manner that is inconsistent

with testimony or other evidence presented in a later action "may be evidence in this matter but does not itself give rise to . . . issue preclusion." (Footnote omitted.) The court in the third foreclosure action made no findings regarding the 2010 modification that could be given preclusive effect in the present action because the court in that action only made findings concerning the 2012 modification.

The present action and the third foreclosure action are sufficiently different and distinct as not to implicate either claim or issue preclusion. The record does not support a finding that any material issue or claim raised and decided on the merits in the third foreclosure action has also been raised and adjudicated in the present matter, which was brought following the issuance of a new notice of default. Accordingly, on the basis of our plenary review of the defendant's claim, we conclude that the court correctly determined that a judgment of strict foreclosure was not precluded under the doctrines of res judicata or collateral estoppel.

## III

Finally, the defendant claims that the court improperly rendered a judgment of strict foreclosure because the plaintiff failed "to provide evidence of a breach of the alleged [2010 modification] and proper notice of default as required to [establish a prima] facie case." We disagree that there was inadequate evidence of a breach necessary to support a judgment of strict foreclosure and decline to review the remainder of the defendant's claim because it is inadequately briefed.

As previously stated, to establish a prima facie case in a mortgage foreclosure action, the plaintiff bears the burden of proving by a preponderance of the evidence that (1) it is the owner of the note and mortgage, (2) the defendant has defaulted on the note at issue, and

(3) it has satisfied any conditions precedent to foreclosure as set forth in the note and mortgage. See *GMAC Mortgage, LLC* v. *Ford*, supra, 144 Conn. App. 176. Thus, for example, if the note and mortgage require the plaintiff to provide the defendant with notice of a default, then proper notice is a condition precedent to an action for foreclosure. See *Wells Fargo Bank, N.A.* v. *Fitzpatrick*, 190 Conn. App. 231, 239, 210 A.3d 88, cert. denied, 332 Conn. 912, 209 A.3d 1232 (2019). "[W]hether the plaintiff has established a prima facie case [in a foreclosure action] is a question of law, over which our review is plenary." (Internal quotation marks omitted.) *Financial Freedom Acquisition, LLC* v. *Griffin*, 176 Conn. App. 314, 323, 170 A.3d 41, cert. denied, 327 Conn. 931, 171 A.3d 454 (2017).

In support of this claim, the defendant does not dispute that the plaintiff was the owner of the note and mortgage. The plaintiff presented the original note, endorsed in blank, and entered into evidence a series of assignments showing that the plaintiff was the current mortgage holder. The defendant called no witnesses and presented no evidence demonstrating that someone other than the plaintiff was the owner of the note and mortgage.

Instead, the defendant first argues that the plaintiff failed to present evidence establishing that he was in default on the note and mortgage as modified by the 2010 modification. To the contrary, our review of the record shows that there was ample evidence presented from which the court properly determined that the defendant was in default on the note, both in its original form and as amended. McDowell's testimony and the business records of the loan servicer, which were entered into evidence without objection, established that the defendant had not made any payments toward his loan obligation since November, 2010, and, thus, clearly was in default of his obligation to make monthly

mortgage payments. Although the amount of the required payments arguably may have depended upon whether the operative terms were those in the original note or as modified by later agreement, there is no dispute that he had a duty to make monthly payments and his undisputed failure to do so was a default on the note, both in its original form and as modified.

Finally, the defendant suggests that the plaintiff failed to provide him with proper notice of the default. We decline to address this aspect of the defendant's claim because it is not adequately briefed.

"We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [When] a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned. . . . For a reviewing court to judiciously and efficiently . . . consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. . . . In addition, briefing is inadequate when it is not only short, but confusing, repetitive, and disorganized." (Internal quotation marks omitted.) *Homebridge Financial Services, Inc.* v. *Jakubiec*, 223 Conn. App. 517, 542–43, 309 A.3d 1223 (declining to address merits of claim for which discussion in brief consisted of one paragraph and one legal citation), cert. denied, 349 Conn. 909, 314 A.3d 602 (2024).

The totality of the defendant's discussion in his principal brief with respect to the alleged lack of proper notice of default is contained in one short paragraph that is devoid of any legal citations or analysis. The

entirety of the defendant's argument is as follows: "[A]t trial, [McDowell] could not link the notice of default . . . to the alleged [2010 modification] . . . . In fact, she testified that she did not know what instrument the notice of default was meant to pertain to. . . . It is worth noting the default notice dated December 11, 2018, relied upon by the plaintiff for default of the alleged 2010 modification was issued over eight years after the occurrence of the alleged default and well after the previous foreclosure trial of May, 2018, where, again, it failed to even mention an alleged [2010 modification]." (Citations omitted.) The defendant does not provide any legal analysis regarding the significance of these factual assertions to his claim that he was not provided a proper notice of default. Given the inadequacy of the brief concerning the issue of notice, we deem this aspect of the defendant's claim abandoned.

The judgment is affirmed and the case is remanded for the sole purpose of setting new law days.

In this opinion the other judges concurred.